**In re Christina E. BUTLER, Debtor.**

**Christina E. Butler, Plaintiff,**

**v.**

**One West Bank, FSB, a federally chartered savings bank; Mortgage Electronic Registration Systems, Inc., a Delaware corporation; Northwest Trustee Services, Inc., a Washington corporation; Federal Home Loan Mortgage Corporation, a United States Government sponsored enterprise; and Doe Defendants 1–10, Defendants.**

**Bankruptcy No. 11–18996–MLB.
Adversary No. 12–01209–MLB.**

United States Bankruptcy Court,
W.D. Washington,
at Seattle.

Entered July 9, 2014.

Larry B. Feinstein, Vortman & Feinstein, Seattle, WA, for Debtor.

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ON VIOLATION OF WASHINGTON'S DEED OF TRUST ACT, RCW 61.24 *ET SEQ.*

MARC BARRECA, Bankruptcy Judge.

This matter came before the Court on Federal Home Loan Mortgage Corporation, One West Bank FSB, and Northwest Trustee Service's motions for summary judgment on the only remaining claims in this action, violations of the Washington Deed of Trust Act (the "**Motion for Summary Judgment,**" Dkt. Nos. 173, 180). The Court heard oral argument on February 26, 2014, and took the matter under advisement. For the reasons set forth herein, the Motion for Summary Judgment is granted.

### *Jurisdiction*

Subject matter jurisdiction is proper pursuant to 28 U.S.C. §§ 157, 1334, as the claims asserted in this adversary proceeding arise in, under, or are related to Christina Butler's bankruptcy case, Case No. 11–18996–MLB. Venue is proper pursuant to 28 U.S.C. §§ 1408, 1409.

## Undisputed Facts

### A. Background Information

There is no genuine dispute as to the following facts:

Long before the transaction at issue in this case, Federal Home Loan Mortgage Corporation ("**Freddie Mac**"), Bankers Trust Co. of California, N.A. ("**Bankers Trust**"), and IndyMac Bank F.S.B. ("**IndyMac**"), entered into a Custodial Agreement for Whole and Participation Mortgages Third–Party Custodian (the "**Original Agreement**"), effective February 6, 2002. For mortgage loans subject to the Original Agreement, Bankers Trust acted as the custodian of records for Freddie Mac, and IndyMac was the servicer for such loans. In April 2002, the name of Bankers Trust was changed to Deutsche Bank National Trust Company ("**Deutsche Bank**").

On or about April 27, 2007, Plaintiff executed a promissory note (the "**Note**") in favor of IndyMac, secured by a deed of trust (the "**Deed of Trust**") on 18420 40th Avenue West, Lynnwood, WA 98037 (the "**Property**") (all together, "**Plaintiff's Loan**"). The Deed of Trust named Indy-Mac as lender, Chicago Title Insurance Company as trustee, and Mortgage Electronic Registration Systems, Inc. ("**MERS**") as beneficiary. Specifically, the Deed of Trust provided that "acting solely as nominee for the Lender and Lender's successors and assigns MERS is the beneficiary under this Security Instrument." IndyMac was the original investor and servicer for Plaintiff's Loan.

Sometime in May 2007, IndyMac sold Plaintiff's Loan to a new investor, Freddie Mac. The Note was indorsed in blank, and IndyMac remained the loan servicer.

Plaintiff did not deny that Plaintiff's Loan was sold to Freddie Mac or allege facts to genuinely dispute Freddie Mac's ownership of the Note.[1]

On or about May 8, 2007, Deutsche Bank took physical possession of the Note as document custodian for Freddie Mac. Deutsche Bank placed the Note in a secure file room for safekeeping.

On or about July 11, 2008, IndyMac was deemed a failed financial institution and closed by the Office of Thrift Supervision ("**OTS**"). The OTS appointed the Federal Deposit Insurance Corporation (the "**FDIC**") as receiver, chartered a new institution, IndyMac Federal Bank, FSB ("**IndyMac Federal**"), placed IndyMac Federal in conservatorship, appointed the FDIC as conservator, and effectuated the transfer of substantially all of IndyMac's assets to IndyMac Federal—including the servicing rights to Plaintiff's Loan. Therefore, on or about July 11, 2008, IndyMac Federal began servicing Plaintiff's Loan on behalf of Freddie Mac.

On or about March 19, 2009, the FDIC sold substantially all of IndyMac Federal's assets to One West Bank, F.S.B. ("**One West**"), thereby transferring the servicing rights for Plaintiff's Loan from IndyMac Federal to One West.

On or about May 12, 2009, Freddie Mac, Deutsche Bank, and One West replaced the Original Agreement with the Custodial Agreement: Single–Family Mortgages Freddie Mac Form 1035 (rev. 2/08.2) (the "**Custodial Agreement**"), to govern "the deposit and custodianship of the original Notes for Mortgages sold to and serviced for Freddie Mac." Deutsche Bank was identified as the "Custodian," and One

---

**1.** Rather, Plaintiff alleged that she "did not have any dealing with [Freddie Mac] and did not know about the involvement of Freddie Mac in her loan transaction until this litigation."

West was identified as the "Seller/Servicer."

The Custodial Agreement required, among other things, that the parties adhere to the Freddie Mac Single–Family Seller/Servicer Guide (the **"Guide"**) and Document Custody Procedures Handbook (the **"Handbook"**). Specifically, Section 2(a) of the Custodial Agreement provided that "Custodian hereby represents and warrants to, and covenants with, Seller/Servicer and Freddie Mac that Custodian will perform the functions and fulfill the duties set forth in Sections 18.6, 18.7, 56.9 and other relevant portions of the Guide. Section 2(g) provided that: "Custodian shall release Notes only pursuant to Section 18.6(e) of the Guide.... Seller/Servicer shall hold in trust and for the sole benefit of Freddie Mac all Notes released to it." Section 3(b) provided that: "Pursuant to Section 18.1 of the Guide, compensation for Custodian's services, including (without limitation) any action taken at the request or demand of Freddie Mac, is the sole responsibility of Seller/Servicer." In Section 4, Seller/Servicer "represent[ed] and warrant[ed] to, and covenant[ed] with, Freddie Mac" that it would, among other things, promptly notify Freddie Mac if it discovered that the Custodian failed to comply with operations requirements or the terms of the Custodial Agreement.

One West's responsibilities as Seller/Servicer were articulated in more detail in the Guide and Handbook. Guide Section 18.1 gave One West the latitude to choose the document custodian, so long as the document custodian satisfied all of Freddie Mac's specified requirements set forth in Section 18.2. Notably, under Section 18.2(c), One West had the option of acting as its own custodian. Section 18.2 also reiterated that "[c]ompensation for the Document Custodian's ... services is the sole responsibility of the Seller/Servi-

cer." Section 18.3 provided that "before delivering any Notes and assignments to a Document Custodian ..., the Seller/Servicer must deliver a Form 1035, Custodial Agreement: SingleFamily Mortgages, executed by the Seller/Servicer and the Document Custodian to Freddie Mac." In other words, once One West identified and engaged the document custodian it sought to employ, here Deutsche, Freddie Mac indicated its assent to that Document Custodian by entering into a Custodial Agreement with One West and Deutsche Bank. Section 18.4 sets forth the Seller/Servicer's responsibilities, including (1) ensuring that the Document Custodian complies with all applicable Freddie Mac requirements, and (2) monitoring the eligibility status of the Document Custodian. Specifically, Section 18.4 provides in relevant part:

**(a) Responsibility for documents and Document Custodian compliance**

The Seller/Servicer agrees to indemnify Freddie Mac and hold Freddie Mac harmless for any loss, damage or expense (including court costs and reasonable attorney fees) that Freddie Mac may incur as a result of the Seller/Servicer's Document Custodian holding Notes and any other documents.

The Seller/Servicer is responsible for ensuring that its Document Custodian complies with all applicable Freddie Mac requirements regarding Note custody. Freddie Mac's Document Custody Procedure Handbook is available to Seller/Servicers and Document Custodians on AllRegs, or at http://www.Freddie Mac.com/cim/handbook.html. Seller/Servicers and Document Custodians will find this handbook to be a useful resource in fulfilling these requirements.

**(b) Monitoring the eligibility status of the Document Custodian.**

The Seller/Servicer is responsible for monitoring its Document Custodian for

compliance with Freddie Mac's Document Custodian eligibility requirements, and must ensure that its Document Custodian is in compliance with all eligibility requirements at all times.

Section 18.6 articulated the Document Custodian's functions and duties. In particular, Deutsche Bank was responsible for "[m]aintaining custody and control of the original Notes and assignments on behalf of Freddie Mac," and storing those documents "in secure, fire resistant facilities." Section 18.6(a)(1)(2). Deutsche Bank was also required to release Notes to One West upon request. Section 18.6(e) provided in relevant part:

> The Seller/Servicer may require Notes and related documents in conjunction with the maturity, prepayment, foreclosure, repurchase, substitution, conversion, modification, or assumption of a Mortgage or the recordation of the assignment of a Security Instrument to Freddie Mac.

> The Document Custodian will release to the Seller/Servicer any Note and related documents in the Document Custodian's custody upon receiving from the Seller/Servicer a properly completed and executed [request].

The Guide reiterated these duties:

> As Document Custodian, you are responsible for safeguarding Freddie Mac's Notes. When you receive a ... Request for Release of Documents, from the Servicer, you are responsible for releasing the requested documents to the Servicer. The Servicer will hold in trust, for Freddie Mac's benefit, all Notes and assignments that you release to the Servicer.

Sometime in August 2009, Plaintiff defaulted on the Note.

On or about November 4, 2009, Erica Johnson–Seck ("**Johnson–Seck**"), on behalf of One West, executed a Beneficiary Declaration (the "**Beneficiary Declaration**") identifying One West as the "actual holder" of Plaintiff's Note. It provided in relevant part:

> One West Bank, FSB is the actual holder of the promissory note or other obligation evidencing the above-referenced loan or has requisite authority under RCW 62A.3–301 to enforce said obligation. The trustee may rely upon the truth and accuracy of the averments made in this declaration.

On or about November 10, 2009, JC San Pedro ("**San Pedro**"), on behalf of MERS, executed an Assignment of Deed of Trust from MERS to One West (the "**Assignment of Deed of Trust**").

On or about November 10, 2009, Suchan Murray, on behalf of One West, executed an Appointment of Successor Trustee (the "**Appointment of Successor Trustee**"), appointing Northwest Trustee Services Inc. ("**Northwest Trustee**") as successor trustee of Plaintiff's Deed of Trust. The Appointment of Successor Trustee provided in relevant part:

> The present beneficiary under said deed of trust appoints Northwest Trustee Services, Inc., a Washington corporation, whose address is P.O. Box. 997, Bellevue, WA 98009–0997, as successor trustee under the deed of trust with all powers of the original trustee.

> The undersigned present beneficiary warrants and represents that, as of the date this Appointment of Successor Trustee has been executed and acknowledged, it is the owner and holder of the obligation secured by the subject deed of trust and is not holding the same as security for a different obligation.

On or about December 11, 2009, Northwest Trustee executed a Notice of Default pursuant to RCW 61.24.030. The information in the Notice of Default regarding

"delinquent monthly payments" came from One West. The Notice of Default provided in relevant part:

**(C) Declaration of payment default:** The beneficiary declares you in default for failing to make payments as required by your note and deed of trust.

. . .

**(G) Effect of failure to cure.** Failure to cure all alleged defaults within 30 days of mailing/personal service of this notice may lead to recordation, transmittal and publication of a notice of sale and the Property may be sold at public auction no less than 120 days from the date of this notice.

. . .

**(K) Contact Information for Beneficiary (Note Owner) and Loan Servicer.**

The beneficiary of the deed of trust is **One West Bank, FSB,** whose address and telephone number are:

888 East Walnut Street
Pasadena, CA 91101
800–669–2300

The loan servicer for this loan is One West Bank FSB, whose address and telephone number are:

888 East Walnut Street
Pasadena, CA 91101
800–669–2300

**(L) Notice pursuant to the Federal Fair Debt Collection Practices Act:** . . . you are notified that:

. . .

2. The creditor to whom the debt is owed One West Bank, FSB/One West Bank FSB.

3. Unless within 30 days after receipt of this notice you dispute the debt or any portion of it, we will assume the debt to be valid.

(emphases in original). The Notice of Default was dated December 11, 2009 and,

next to the date, the signature block stated:

One West Bank, FSB

By Northwest Trustee Services, Inc., its duly authorized agent

The Notice of Default also attached a Beneficiary Declaration Pursuant to Chapter 61.24 RCW (SB 5810) and Foreclosure Loss Mitigation Form (the **"Loss Mitigation Form"**), executed by Johnson–Seck on behalf of One West, which provided in relevant part that "[t]he beneficiary or beneficiary's authorized agent has contacted the borrower under, and has complied with, section 2 of the act (contract provision to 'assess the borrower's financial ability to pay the debt secured by the deed of trust and explore options for the borrower to avoid foreclosure')."

On or about January 18, 2010, Northwest Trustee executed and recorded a Notice of Trustee's Sale, pursuant to RCW 61.24, *et seq.*, setting a sale date of April 23, 2010. It identified One West as the "Beneficiary."

On or about April 18, 2010 Plaintiff obtained a screenshot from the Freddie Mac website showing that Freddie Mac is the owner of Plaintiff's mortgage.

On or about June 1, 2010, One West sent Plaintiff a letter indicating that according to their records "the investor for your loan is Federal Home Loan Mtg Co.," and "IndyMac Mortgage Services, a division of One West Bank, FSB, is the servicer of your loan." One West also noted that, "[w]e are available to answer any questions regarding your loan."

On or about June 22, 2011, Northwest Trustee executed and recorded an Amended Notice of Trustee's Sale, setting a Trustee's Sale for July 29, 2011. It identified One West as the "Beneficiary." On or about July 28, 2011, Plaintiff filed for

bankruptcy under Case No. 11–18996–MLB.

Deutsche Bank had physical possession of the Note until March 14, 2012 when it was sent to One West, at One West's request, for purposes of litigation. One West then forwarded the Note to its counsel, Routh Crabtree Olsen, PS ("**RCO**") for the same purpose.

On or about August 15, 2013, One West stopped servicing Plaintiff's Loan, and servicing was taken over by Ocwen Loan Servicing LLC ("**Ocwen**").

No non judicial foreclosure sale ever occurred, and no non judicial foreclosure is pending.

### B. *There is no genuine dispute of fact precluding admission of the evidence submitted by Defendants.*

Plaintiff attempted to create disputes of fact by suggesting that the "Court should closely scrutinize Defendants' evidence for admissibility as well as authenticity with a big question mark on witness credibility." However, after considering Plaintiff's arguments, the Court concludes that there is no genuine dispute of fact to preclude admission of the evidence submitted by Defendants.

Plaintiff attempted to attack the credibility of declarants Charles Boyle ("**Boyle**") and Barbara Campbell ("**Campbell**"), with general affronts to their veracity and selected testimonial excerpts from other, unrelated cases. However, Plaintiff did not set forth specific facts to suggest that the Court should not believe the testimony of the declarants as set forth *in this case*. Moreover, Plaintiff did not submit any evidence of her own to suggest that the facts offered by Boyle and Campbell are untrue, or to otherwise dispute their testimony.

Plaintiff further asserted that the declarations of Boyle and Campbell were inadmissible hearsay. Federal Rule of Evidence Rule 803(6) provides that evidence is not excluded by the rule against hearsay if it is

[a] record of an act, event, condition, opinion, or diagnosis if:

(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling . . .

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness . . .; and

(E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

FRE 803(6). As the Ninth Circuit recognized:

The foundation requirement for Rule 803(6) may be satisfied by the testimony of anyone who is familiar with the manner in which the document was prepared, even if he lacks firsthand knowledge of the matter reported, and even if he did not himself either prepare the record or even observe its preparation. Indeed, we have previously noted that it is not even necessary that a sponsoring witness be employed by the business at the time of the making of each record.

*Miller v. Fairchild Industs., Inc.,* 885 F.2d 498, 514 (9th Cir.1989) (internal quotations omitted). The declarations submitted by Boyle and Campbell track the required elements of Rule 803(6) and satisfy the business records exception.

Plaintiff attacked Jeff Stenman's ("**Sten-man**") testimony on similar grounds, criticizing his reliance on Northwest Trustee's business records. Plaintiff complained about Northwest Trustee's general practice of relying on computers to facilitate their business, but there is no law precluding a foreclosure trustee from using computers. As with Plaintiff's attacks on Boyle and Campbell, Plaintiff failed to produce evidence of her own to dispute Stenman's testimony and failed to demonstrate a genuine dispute of fact.

Plaintiff's attacked Cody Hoesly's declaration on the basis that it was too vague and was made without personal knowledge. Mr. Hoesly's supplemental declaration more than clarified for Plaintiff the matters she questioned. Moreover, Hoesly's declaration is only tangentially relevant, as the custody of the Note during this litigation is inconsequential to resolving the disputes at hand.

Finally, Plaintiff alleged that Johnson–Seck and San Pedro did not review or understand various documents they signed on behalf of their respective entities. Plaintiff also pointed to testimonial excerpts from other, unrelated cases to suggest that Johnson–Seck may not have fully understood her capacity to sign on behalf of One West. Regardless of whether these allegations are true, Plaintiff did not identify material inaccuracies in the documents that Johnson–Seck and San Pedro signed, nor did Plaintiff allege specific facts to suggest that Johnson–Seck and San Pedro did not have the requisite capacities to sign the documents. Their understanding of their capacities and the documents themselves is largely irrelevant.

For these reasons, there is no genuine dispute of fact that precludes admissibility of the evidence submitted by Defendants.

### *Analysis*

#### A. *Summary Judgment Standard*

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When a properly supported motion for summary judgment has been presented, the adverse party "may not rely merely on allegations or denials in its own pleadings." *Id.* at 248, 106 S.Ct. 2505. Rather, the non-moving party must set forth specific facts demonstrating the existence of a genuine issue for trial. *Id.* at 256, 106 S.Ct. 2505.

#### B. *Defendants did not act without lawful authority or materially violate Washington's Deed of Trust Act, RCW 61.24* et seq.

Defendants seek summary judgment on Plaintiff's claims for violation of Washington's Deed of Trust Act, RCW 61.24 *et seq.* Recently Division I of the Court of Appeals held that "a borrower has an actionable claim against a trustee who, by acting without lawful authority or in material violation of the [Deed of Trust Act], injures the borrower, even if no foreclosure sale has occurred." *Walker*, 176 Wash.App. 294, 313, 308 P.3d 716 (2013). For the reasons set forth below, the Defendants did not act without lawful author-

ity or materially violate Washington's Deed of Trust Act.[2]

#### 1. Because One West was a "holder" of the Note, One West was an appropriate "beneficiary" of the Note, as defined in RCW 61.24.005(2).

Central to the dispute in this case is what it means to be a *"beneficiary"* for purposes of the Deed of Trust Act. Plaintiff argued that "beneficiary" status under Washington law hinges on "actual physical possession" of the original signed promissory note.

"Beneficiary" is defined in RCW 61.24.005(2) as "the *holder* of the instrument or document evidencing the obligations secured by the deed of trust." Unfortunately, Washington's Deed of Trust Act does not define what constitutes a "holder."

#### a. Under Washington law, a "holder" means a "person in possession" of a negotiable instrument.

In *Bain,* the Washington Supreme Court considered what it meant to be a "beneficiary" for purposes of the Deed of Trust Act. Since a "beneficiary" is defined as "the holder" under Washington law, the Washington Supreme Court also considered what it meant to be a "holder," and stated that it was being guided by the Uniform Commercial Code's ("UCC") definition of "holder." *See Bain v. Metro. Mtg. Grp., Inc.,* 175 Wash.2d 83, 104, 285 P.3d 34 (2012).

The UCC provides that "holder" means "the *person in possession* of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." *See* U.C.C. § 1–201(b)(21). Notably, the identical definition has been adopted in Washington's Commercial Code. *See* RCW 62A.1–201(a)(21). The Note at issue here has no specific payee; it is indorsed in blank. Therefore, the appropriate inquiry is what it means to be a "person in possession" of a promissory note.

In *Bain,* after adopting the UCC's definition of "holder," the Washington Supreme Court subsequently stated that "a beneficiary must either *actually* possess the promissory note or be the payee." (emphasis added). However, the UCC definition of "holder" does not include a requirement of "actual" possession. Rather, the UCC requires only "possession." The Washington Supreme Court offered no explanation as to why the word "actual" was being inserted into the analysis of what it means to be a holder, and gave no indication of what "actual" was intended to mean. *Bain*'s articulation requiring "actual" possession appears to have been nothing more than an attempt to restate the UCC's definition of "holder" in simpler terms. Whatever the genesis, given the Washington Supreme Court's express adoption of the UCC's definition of "holder" and its silence as to why the word "actual" was being inserted, the Court concludes that the word "actual" is superfluous dicta.

#### b. A "holder" may be a "person in possession" of a negotiable instrument either physically, or through an agent.

█ Having carefully reviewed the relevant law, the Court concludes that in

---

**2.** As mentioned in Defendants' reply in support of summary judgment, Plaintiff abandoned a few of her claims by making no response to Defendants' arguments against them. The abandoned claims include Plaintiff's claims related to RCW 61.24.030(6), claims related to good faith and the ownership of Northwest Trustee and RCO, and claims related to notarization of foreclosure notices.

Washington one may be a "person in possession" of a note either physically, or through an agent. *Bain* called for "actual possession," which could at first glance be understood to mean that only *physical* possession suffices. Indeed, some courts have interpreted "actual" to mean "physical." *See e.g. McDonald v. OneWest Bank,* 929 F.Supp.2d 1079, 1088 (W.D.Wash.2013) ("One West's authority to issue the statutory notice of default and/or to appoint a successor trustee hinges on its actual physical possession of the original signed promissory note."). However, as set forth above, nothing in *Bain* suggested that the insertion of the word "actual" was intended to create a departure from the UCC's definition of "holder." And nowhere in *Bain* did the Washington Supreme Court require "physical" possession. In fact, the Washington Supreme Court was careful to provide that "nothing in this opinion should be construed to suggest an agent cannot represent the holder of a note ... Washington law, and the deed of trust act itself, approves of the use of agents." *Bain,* 175 Wash.2d at 106, 285 P.3d 34.

The Permanent Editorial Board for the Uniform Commercial Code offers some illustrations that demonstrate how an entity may be a "holder" even if the entity possesses the note through an agent. The illustrations are as follows:

2. Maker issued a negotiable mortgage note payable to the order of Payee. Payee indorsed the note in blank and gave possession of it to Transferee. Transferee is the holder of the note and, therefore, is the person entitled to enforce it. UCC §§ 1–201(b)(21)(A), 3–301(i).

. . .

4. Same facts as Illustrations 2 and 3, except that (i) under the law of agency, Agent is the agent of Transferee for purposes of possessing the note and (ii) it is Agent, rather than Transferee, to whom actual physical possession of the note is given by Payee. In the facts of Illustration 2, Transferee is a holder of the note and a person entitled to enforce it. In the context of Illustration 3, Transferee is a person entitled to enforce the note. Whether Agent may enforce the note or mortgage on behalf of Transferee depends in part on the law of agency and, in the case of the mortgage, real property law.

Permanent Editorial Board for the Uniform Commercial Code, Application of the Uniform Commercial Code to Selected Issues Relating to Mortgage Notes, p. 7 (Nov. 14, 2011). In Illustration 4, Transferee is a "holder" (as it was in Illustration 2) notwithstanding that it never had physical possession of the note. And the agent who holds physical possession of the note in Illustration 4 may or may not be entitled to enforce the note, depending upon applicable non-UCC agency and real property law.

Indeed, Division I of the Washington Court of Appeals recently recognized that a holder can possess a note directly or through an agent. *See Ortega v. Northwest Trustee Servs. Inc.,* 2014 WL 646347, 2014 Wash.App. LEXIS 382 (Wash.Ct. App. Feb. 18, 2014) (unpublished). In *Ortega,* Wells Fargo was a loan servicer on behalf of HSBC, and Wells Fargo physically possessed the note. Wells Fargo executed a beneficiary declaration identifying HSBC as the "actual holder," and Wells Fargo appointed the successor trustee. The court stated:

The Ortegas take issue with [Wells Fargo] acting as [HSBC's] agent in holding the note and appointing [the] successor trustee. However, a holder can possess a note 'directly or through an agent.' RCWA 62A.3–201 cmt.a. The *Bain* court

also acknowledged that the deed of trust act approves the use of agents. MERS is not a proper agent, because its principal is unidentifiable. Here, in contrast, [HSBC] is clearly the principal in control of its agent, [Wells Fargo]. [Wells Fargo's] agency is permissible under *Bain.*

*Id.* at *7 n. 6, 2014 Wash.App. LEXIS 382, at *19 n. 6.[3]

### c. Under Washington law and the applicable documents, One West and Deutsche Bank were agents of Freddie Mac, and Deutsche Bank was also an agent of One West.

■■■ According to the Washington Supreme Court, "an agency relationship results from the manifestation of consent by the [principal] to act on his behalf and subject to his control." *Bain,* 175 Wash.2d at 106, 285 P.3d 34. Similarly, the Restatement Third of Agency provides that "agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."[4] Restatement (Third) of Agency, § 1.01 (2006). "The . . . most crucial factor [in assessing agency] is the right to control the details

of the work." *Larner v. Torgerson Corp.,* 93 Wash.2d 801, 804–05, 613 P.2d 780 (1980).

The Custodial Agreement between Freddie Mac, One West, and Deutsche Bank, which incorporated the Guide and Handbook, created various agency relationships. Plaintiff did not genuinely dispute that One West was Freddie Mac's agent for purposes of servicing notes and appointing, monitoring, and managing the document custodian. Nor did Plaintiff genuinely dispute that Deutsche Bank was Freddie Mac's agent for purposes of physically possessing the Note. What Plaintiff disputed was the legal question of whether Deutsche Bank was *One West's* agent for purposes of physically possessing the Note and, ultimately, whether One West was a "holder" and "beneficiary" for purposes of the Deed of Trust Act.

■■■ One West exercised significant control over the details of Deutsche Bank's work, and both parties assented to the relationship. Their relationship was set forth in writing not only in the Custodial Agreement, but also in the Guide and Handbook.[5] As elaborated above, One West was initially responsible for identifying and choosing Deutsche Bank to serve as the Document Custodian. Thereafter, One West was responsible for monitoring Deutsche Bank as to both performance

---

**3.** It appears that the *Ortega* court mistakenly transposed the names of Wells Fargo and HSBC in the cited footnote. Nevertheless, the court's rationale is clear. For purposes of clarity, this Court has bracketed the names to reflect how they should have appeared in the opinion. This Court has been advised that the defendants in *Ortega* are moving for clarification of the opinion.

**4.** Washington courts routinely turn to the Restatements Second and Third of Agency for guidance in interpreting agency relationships. *See e.g., Chi. Title Ins. Co. v. Office of Ins. Comm'r,* 178 Wash.2d 120, 309 P.3d 372 (2013); *Annechino v. Worthy,* 175 Wash.2d

630, 290 P.3d 126 (2012); *Larner v. Torgerson Corp.,* 93 Wash.2d 801, 613 P.2d 780 (1980).

**5.** The record before this Court differs significantly from the record that was before Judge Lasnik in *McDonald v. OneWest Bank. See* 929 F.Supp.2d 1079 (W.D.Wash.2013). In *McDonald,* under similar facts, Judge Lasnik found that the requisite agency relationship between One West and Deutsche Bank had not been established—but he apparently was not presented with the supporting details provided in evidence to this Court, as set forth in the Guide and Handbook.

and eligibility, and reporting any problems to Freddie Mac. Although Freddie Mac retained the right to exercise some control over Deutsche Bank, One West was the entity primarily responsible for monitoring and managing Deutsche Bank—including ensuring that Deutsche Bank followed Freddie Mac's guidelines regarding note custody. One West was also solely responsible for compensating Deutsche Bank for work performed. And, if One West was dissatisfied with Deutsche Bank for whatever reason, it could levy the ultimate penalty and terminate Deutsche Bank.

Critical to the legal issue of agency, One West also directly controlled Deutsche Bank with regard to possession of the Note. Upon making a proper request, *One West could demand physical possession of the Note from Deutsche Bank at any time.* Guide Section 18.6(e) provided that upon request, the "Document Custodian *will release* to the Seller/Servicer any Note and related documents in the Document Custodian's custody" (emphasis added). That section also provided that the Seller/Servicer "may *require*" those documents "in conjunction with the ... foreclosure ... of a Mortgage" (emphasis added).

Moreover, although One West chose to use Deutsche as the Document Custodian, One West could have changed its mind at any time and become *its own* Document Custodian. Guide Section 18.2(c) expressly contemplated that One West could choose to physically possess the notes on its own behalf, rather than through an agent. It provided that: "Seller/Servicer may act as its own Document Custodian." In other words, One West delegated its Document Custodian responsibilities to its agent, Deutsche Bank, but One West also could have performed all of its responsibilities without ever employing a Document Custodian.

Given One West's monitoring and management responsibilities over Deutsche Bank, its comprehensive control over Deutsche Bank's ability to remain in its role as Document Custodian, and its ability to demand the Note from Deutsche Bank, the Court concludes that Deutsche Bank was an agent of One West for purposes of physically possessing the Note.

In sum, Deutsche Bank was simultaneously the agent of both Freddie Mac and One West for purposes of physically possessing the Note. Freddie Mac was a "holder" and "beneficiary" of the note for purposes of Washington law, as the Note was indorsed in blank and Freddie Mac had possession of the Note through its agent and Document Custodian, Deutsche Bank. Similarly, One West was also a "holder" and "beneficiary," as the Note was indorsed in blank and One West also had possession of the Note through its agent, Deutsche Bank.

**d. The Beneficiary Declaration executed by One West correctly identified One West as an "actual holder" and "beneficiary" of the Note.**

■ Plaintiff argued that One West violated the Deed of Trust Act by identifying itself on the Beneficiary Declaration as the "actual holder" of the promissory note and/or "beneficiary" under Washington law. Tim Stephenson, Plaintiff's "expert on loan transfers and mortgage-backed securities" offered his opinion that "One West Bank, FSB is not the beneficiary, holder, or owner of the subject loan." However, this statement is a legal conclusion, not an expert opinion. "[A]n expert witness cannot give an opinion as to her *legal conclusion, i.e.,* an opinion on an ultimate issue of law." *United States v. Boulware,* 558 F.3d 971, 975 (9th Cir.2009) (quoting *Nationwide Transp. Fin. v. Cass Info. Sys.,* 523 F.3d 1051, 1059–60 (9th Cir.2008) (emphasis in original)).

Because, for the reasons set forth above, One West was a "holder" of the Note, One

West's representation in the beneficiary declaration that it was the "actual holder" was accurate. "Beneficiary" is defined in RCW 61.24.005(2) as "the holder of the instrument or document evidencing the obligations secured by the deed of trust." Because One West was an "actual holder," it was a "beneficiary" under Washington law. Therefore, One West did not violate the Deed of Trust Act in executing the Beneficiary Declaration.[6]

**2. One West did not violate RCW 61.24.020.**

█ RCW 61.24.020 requires that only a deed of trust securing payments to a "beneficiary" may be foreclosed. Plaintiff argued that One West was not a "beneficiary" under Washington law. For the reasons set forth above, One West was a beneficiary under Washington law, and One West had the authority to prosecute the non judicial foreclosure. Therefore, RCW 61.24.020 was not violated.

**3. One West did not violate RCW 61.24.010(2).**

RCW 61.24.010(2) provides that "the beneficiary shall appoint a trustee or a successor trustee." Plaintiff argued that One West was not a "beneficiary" and that, therefore, One West could not appoint Northwest Trustee as successor trustee. Here, because One West was a "beneficiary" under Washington law, it did not violate RCW 61.24.010(2) in appointing Northwest Trustee as successor trustee.

**4. Because One West was a holder of the Note, any assignment of the Deed of Trust was irrelevant.**

█ In Washington, a security interest follows the obligation it secures. *See*

e.g., *Am. Sav. Bank & Trust Co. v. Helgesen*, 64 Wash. 54, 61, 116 P. 837 (1911), *on reh'g*, 67 Wash. 572, 122 P. 26 (1912) ("There is no doubt that a mortgage, or any other security given for the payment of a bill or note, passes by a transfer of the bill or note to the transferee."). In *Bain*, the Washington Supreme Court expressly provided that this maxim extends to Washington's Deed of Trust Act. "Washington's [Deed of Trust Act] contemplates the security instrument will follow the note, not the other way around." *Bain*, 175 Wash.2d at 104, 285 P.3d 34. Therefore, any assignment of the Deed of Trust from MERS to One West had no legal effect on the ownership or possession of the Note and was irrelevant for purposes of the disputes at issue here. *See also McPherson v. Homeward Residential*, 2014 WL 442378, at *6, 2014 U.S. Dist. LEXIS 15123, at *14–17 (W.D.Wash. Feb. 4, 2014) (noting that "recording of an assignment of a deed of trust does not affect a borrower's rights").

**5. Northwest Trustee Service did not violate RCW 61.24.030(7).**

█ RCW 61.24.030(7)(a) provides that:

[B]efore the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the *owner* of any promissory note or other obligation secured by the deed of trust. A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the *actual holder* of the promissory note or other obligation secured by the deed of trust *shall be sufficient* proof as required under this subsection.

---

6. Plaintiff raised the argument that "[i]t is highly doubtful that Ms. Johnson–Seck knew what she meant when she stated in the Beneficiary Declaration that One West met the requisites of RCW 62A.3–301." But, regardless of Johnson–Seck's understanding of the Beneficiary Declaration, the statements she made were legally accurate.

(emphases added). Plaintiff argued that One West was not the "owner," "actual holder," or "beneficiary" under the Deed of Trust Act, that Northwest Trustee erred in relying on One West's Beneficiary Declaration, and that Northwest Trustee should have undertaken some kind of independent investigation as to who owned the Note.

As explained above, One West is a "holder" and "beneficiary" under Washington law and properly executed the Beneficiary Declaration. Per the statute's plain language, the Beneficiary Declaration is sufficient proof of "ownership" for purposes of RCW 61.24.030(7)(a). Although the statute's reference to "owner" has long-puzzled courts, the Division I Court of Appeals recently concluded that the beneficiary "need not show that it is the owner of the note." *See Trujillo v. Northwest Trustee Services, Inc.,* — Wash.App. ——, 326 P.3d 768, 776 (2014). The "required proof is that the beneficiary must be the *holder* of the note." *Id.* (emphasis added).

RCW 61.24.030(7)(b) provides that "unless the trustee has violated his or her duty under RCW 61.24.010(4) [which is the duty of good faith to the borrower, beneficiary, and grantor,] the trustee is *entitled to rely* on the beneficiary's declaration as evidence of the proof required under this subsection." RCW 61.24.030(7)(b) (emphasis added).

The evidence in the record does not indicate that Northwest Trustee violated its duty of good faith to any party. Although Plaintiff alleged that Northwest Trustee "actively concealed" that Freddie Mac was the owner of the Note, Plaintiff submitted no evidence that Northwest Trustee did so. The deposition of Stenman, submitted by *Plaintiff,* clearly indicates that Northwest Trustee reviewed the Beneficiary Declaration to ensure that One West was the beneficiary. Northwest Trustee was entitled to rely on that Beneficiary Declaration, and had no duty to undertake an independent investigation. Northwest Trustee appropriately relied on the beneficiary declaration as evidence that One West was the "actual holder" of the Note, and did not violate RCW 61.24.030(7).

## 6. Northwest Trustee did not violate RCW 61.24.030(8).

RCW 61.24.030(8) provides that:

[A]t least thirty days before notice of sale shall be recorded, transmitted or served, written notice of default shall be transmitted by the beneficiary or trustee to the borrower and grantor at their last known addresses by both first-class and either registered or certified mail, return receipt requested, and the beneficiary or trustee shall cause to be posted in a conspicuous place on the premises, a copy of the notice, or personally served on the borrower and grantor. . . .

The Notice of Default was issued by Northwest Trustee, as trustee, and accurately described One West as the beneficiary of the Note. Plaintiff correctly pointed out an inaccuracy in the Notice of Default, in which Northwest Trustee was identified as One West's "duly authorized agent." Stenman stated that this reference was a mistake. Although Plaintiff generally complained that the "mistake" had been replicated numerous times, she provided no evidence to put at issue Defendants' assertion that Northwest Trustee was not One West's agent. Moreover, Plaintiff did not address why a reference to Northwest Trustee being One West's "duly authorized agent" would be a *material* violation of the Deed of Trust Act. It is unclear what alleged harm stemmed from that particular inaccuracy.

**7. Northwest Trustee did not violate RCW 61.24.030(8)(c).**

■ RCW 61.24.030(8)(c) provides that the Notice of Default shall contain "[a] statement that the beneficiary has declared the borrower or grantor to be in default, and a concise statement of the default alleged." Here, the Notice of Default stated that the "beneficiary declares you in default for failing to make payments as required by your note and deed of trust." This statement was sufficient. Thus, RCW 61.24.030(8)(c) was not violated.

**8. Northwest Trustee did not violate RCW 61.24.030(8)(*l*).**

■ RCW 61.24.030(8)(*l*) provides that the Notice of Default shall contain the following information:

In the event the property secured by the deed of trust is residential real property, the name and address of the owner of any promissory notes or other obligations secured by the deed of trust and the name, address, and telephone number of a party acting as a servicer of the obligations secured by the deed of trust.

Plaintiff alleged that Northwest Trustee violated the Deed of Trust Act by failing to identify the "owner" of the Note. As mentioned before, the Beneficiary Declaration identifying One West as the "actual holder" was adequate to liken One West to the Note "owner" for purposes of RCW 61.24.030(7)(a). *See Trujillo v. Northwest Trustee Services, Inc.,* —— Wash.App. ——, 326 P.3d 768, 779 (2014). Plaintiff did not allege that the California address and phone number provided for One West were not accurate. Therefore, Northwest Trustee did not violate RCW 61.24.030(8)(*l*).

**9. Neither One West nor Northwest Trustee violated RCW 61.24.031(2).**

RCW 61.24.031(2) provides:

A notice of default issued under RCW 61.24.030(8) must include a declaration, as provided in subsection (9) of this section, from the beneficiary or authorized agent that it has contacted the borrower as provided in subsection (1) of this section, it has tried with due diligence to contact the borrower under subsection (5) of this section, or the borrower has surrendered the property to the trustee, beneficiary, or authorized agent. Unless the trustee has violated his or her duty under RCW 61.24.010(4), the trustee is entitled to rely on the declaration as evidence that the requirements of this section have been satisfied, and the trustee is not liable for the beneficiary's or its authorized agent's failure to comply with the requirements of this section.

The Loss Mitigation Form executed by One West satisfies RCW 61.24.031(2), and Plaintiff did not allege any specific facts to raise a genuine dispute as to Northwest Trustee's good faith. Therefore, neither One West nor Northwest Trustee violated RCW 61.24.031(2).

**10. Northwest Trustee did not violate RCW 61.24.040(1).**

■ RCW 61.24.040(1) provides:

At least ninety days before the sale, or if a letter under RCW 61.24.031 is required, at least one hundred twenty days before the sale, the trustee shall: (a) Record a notice in the form described in (f) of this subsection in the office of the auditor in each county in which the deed of trust is recorded.

Under this provision only a validly appointed a trustee can record a Notice of Trustee's Sale. Because One West was a "beneficiary," it could properly appoint

Northwest Trustee as a successor trustee. Therefore, Northwest Trustee was validly appointed and properly recorded the Notices of Trustee's Sale, and RCW 61.24.040(1) was not violated.

**C. *Even if Northwest Trustee were liable for some violation of the Deed of Trust Act, neither Freddie Mac nor One West would be vicariously liable for the acts or omissions of Northwest Trustee Service because there is no indicia that Freddie Mac or One West controlled Northwest Trustee.***

As set forth above, *Walker* held that "a borrower has an actionable clam against a *trustee* who, by acting without lawful authority or in material violation of the DTA, injures the borrower, even if no foreclosure sale has occurred." 176 Wash. App. 294, 313, 308 P.3d 716 (Wash.Ct.App. 2013) (emphasis added). A *beneficiary,* lawful or otherwise, could only be vicariously liable if the beneficiary "so controls the trustee so as to make the trustee a *mere agent* of the beneficiary." *Id.*

Plaintiff posited that "*If* NWTS was the agent for One West ... taking directive from its principal, NWTS could not act impartially." This is probably legally correct. However, as set forth above, Plaintiff did not submit specific facts to indicate that One West controlled the details of Northwest Trustee's work or otherwise submit evidence to put agency genuinely in dispute. The same is true for Freddie Mac; Plaintiff did not submit evidence to put agency genuinely in dispute. Therefore, neither One West nor Freddie Mac could be vicariously liable for any acts of Northwest Trustee.

### Conclusion

In conclusion, the Deed of Trust was not materially violated by any Defendant, and summary judgment is granted as set forth herein. As granting summary judgment resolves all issues in this matter, Defendants should submit a form of judgment consistent with this order.