# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| KEVIN J. SELKOWITZ, an individual, | ) ) ) | No. 72505-0-I |
| Appellant, | ) ) ) | DIVISION ONE |
| v. | ) ) ) | |
| LITTON LOAN SERVICING LP, a Delaware Limited Partnership; NEW CENTURY MORTGAGE CORPORATION, a California Corporation; QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, a Washington Corporation; FIRST AMERICAN TITLE INSURANCE COMPANY, a Washington Corporation; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation; and DOE Defendants 1 through 20, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Respondents. | ) ) ) | FILED: November 23, 2015 |

SPEARMAN, C.J. — Kevin Selkowitz appeals the summary judgment dismissal of his complaint against Litton Loan Servicing LP, Quality Loan Servicing Corporation of Washington (QLS) and Mortgage Electronic Registration Systems (MERS), claiming violations of the Deed of Trust Act (DTA), chapter 61.24 RCW, and the Consumer Protection Act (CPA), chapter 19.86 RCW, as well as slander of title. Because no trustee's sale of Selkowitz's property occurred and Selkowitz identifies no genuine issue

of material fact related to any false, unfair or deceptive act or statement by the respondents, dismissal of his claims was proper. We affirm.

## FACTS

On November 1, 2006, Selkowitz executed a promissory note in the amount of $309,600.00 in favor of New Century Mortgage Corporation. The loan was secured by a deed of trust encumbering Selkowitz's real property in Bellevue, Washington. The deed of trust identified New Century as the lender, First American Title Insurance Company as the trustee and MERS, "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns," as the beneficiary. Clerk's Papers (CP) at 12. Selkowitz made payments on the loan directly to New Century.

In March 2007, New Century sold Selkowitz's loan to a securitized trust known as the GSAA Home Equity Trust 2007-1, Asset-Backed Certificates, Series 2007-1 (the Trust). Deutsche Bank National Trust Company is the custodian responsible for maintaining Trust documents and Avelo Mortgage, LLC assumed the servicing rights to Selkowitz's loan. Selkowitz began making loan payments to Avelo. As custodian, Deutsche Bank placed Selkowitz's note in a secure file room and maintained continuous physical possession of the note from approximately November 2006 until August 2013. Pursuant to the servicing and trust agreement, if the servicer of the loan requested the original note, Deutsche Bank was required to deliver the note within five days.

Litton acquired the servicing rights to Selkowitz's loan from Avelo in July 2008.[1] CP 823, 1764. Selkowitz made payments on the loan to Litton until approximately

---

[1] Litton was acquired by Ocwen Financial Corporation in September 2011, after non-judicial foreclosure proceedings were initiated, at which time Ocwen obtained the servicing rights to Selkowitz's loan.

November 2009, when he began experiencing financial hardship and defaulted on the loan. Selkowitz contacted Litton seeking a loan modification, but was unsuccessful in obtaining one.

Litton instructed QLS to commence nonjudicial foreclosure proceedings. On April 23, 2010, QLS sent Selkowitz a notice of default. The notice of default identified Litton as "[t]he Loan Servicer managing your loan, and whom you should contact about your loan . . . ," and provided an address and phone number for Litton. CP at 923. The notice identified the "current owner/beneficiary" of the note as "Please Consult Cover Letter."[2] CP at 923. An employee of QLS signed the notice on behalf of QLS "as Agent for Please Consult Cover Letter, the Beneficiary." CP at 926.

On May 20, 2010, approximately three weeks after sending the notice of default, QLS was appointed to succeed First American as trustee under the deed of trust.

On May 25, 2010, Litton executed a Declaration of Ownership. The declaration, signed by Litton's assistant vice president, stated:

> The undersigned Beneficiary, declares that it is the authorized Agent for the owner and actual holder of that certain promissory note or other obligation which is secured by the following Deed of Trust, and hereby represents and declares as follows:
> . . . .
> 3) Litton Loan Servicing LP is the actual holder of the Promissory Note dated 10/31/2006, in the principal amount of $309,600.00, recorded in KING County under Auditor's File No. 20061101000910. The Note is secured by a Deed of Trust encumbering the aforementioned real property.
> 4) The Note has not been assigned or transferred to any other party or entity.

CP at 930.

---

[2] The record does not contain a cover letter, and an employee for QLS admitted she could not locate one in their records.

On May 27, 2010, QLS scheduled a trustee's sale. On July 2, 2010, Selkowitz sued Litton, QLS and MERS, alleging violations of the DTA and the CPA, as well as slander of title.[3] On December 27, 2012, while Selkowitz's suit was pending, QLS discontinued the trustee's sale, and it has never taken place.

The superior court granted summary judgment dismissal of Selkowitz's complaint and subsequently denied Selkowitz's motion for reconsideration. Selkowitz appeals.

## DECISION

A. <u>Standard of Review</u>

We review a summary judgment order de novo, engaging in the same inquiry as the trial court. <u>Lybbert v. Grant County</u>, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). We view the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. <u>Lybbert</u>, 141 Wn.2d at 34. A defendant can move for summary judgment by showing that there is an absence of evidence to support the plaintiff's case. <u>Young v. Key Pharmaceuticals, Inc.</u>, 112 Wn.2d 216, 225-26 n.1, 770 P.2d 182 (1989). The burden then shifts to the plaintiff to set forth specific facts showing a genuine issue of material fact for trial. <u>Young</u>, 112 Wn.2d at 225. Mere allegations or conclusory statements of fact unsupported by evidence are not sufficient to establish a genuine issue of fact. <u>Baldwin v. Sisters of Providence in Wash., Inc.</u>, 112 Wn.2d 127, 132, 769 P.2d 298 (1989). Nor may the nonmoving party rely on speculation or argumentative assertions that unresolved factual issues remain. <u>Seven Gables Corp. v. MGM/UA Entertainment Co.</u>, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). If the plaintiff "'fails to make a

---

[3] Selkowitz also alleged malicious prosecution, quiet title and violation of the federal Fair Debt Collection Practices Act (FDCPA) but later abandoned those claims.

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,'" summary judgment is proper. Young, 112 Wn.2d at 225 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)).

B. Consumer Protection Act

As Selkowitz acknowledges, the DTA does not create an independent cause of action for monetary damages when, as here, no trustee's sale has occurred.[4] Frias v. Asset Foreclosure Servs., Inc., 181 Wn.2d 412, 417, 334 P.3d 529 (2014). Thus, Litton, MERS and QLS were entitled to dismissal of Selkowitz's DTA claim as a matter of law.

However, a plaintiff may bring a CPA claim based on alleged DTA violations, even without a completed sale. Lyons v. U.S. Bank Nat'l Ass'n, 181 Wn.2d 775, 784, 336 P.3d 1142 (2014). Washington's CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." RCW 19.86.020. To prevail on a CPA claim, a plaintiff must prove (1) the defendant engaged in an unfair or deceptive act or practice, (2) that the act occurred in trade or commerce; (3) that the act affects the public interest; (4) that the plaintiff suffered injury to his business or property; and (5) the injury was causally related to the act. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986). The failure to establish even one of these elements is fatal to the claim. Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., 162 Wn.2d 59, 74, 170 P.3d 10 (2007).

---

[4] It appears from the briefing that the superior court, in a subsequent action, entered a decree of judicial foreclosure. An appeal of this decree is currently pending in this court, US Bank Nat'l Ass'n v. Kevin Selkowitz, No. 73829-1-I.

1. Claims against Litton

Selkowitz argues that Litton's representation that it was the beneficiary of the deed of trust was deceptive because Litton was not the holder of the note. We disagree.

The DTA defines a "beneficiary" as "the holder of the instrument or document evidencing the obligations secured by the deed of trust, excluding persons holding the same as security for a different obligation." RCW 61.24.005(2). The DTA does not define the term "holder." However, the Uniform Commercial Code (UCC) guides our interpretation of the DTA's terms. Bain v. Metro. Mortgage Group, Inc., 175 Wn.2d 83, 104, 285 P.3d 34 (2012). The UCC defines "holder" as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." RCW 62A.1–201(21)(A) (emphasis added). Both the UCC and pre-UCC Washington case law recognize that constructive possession is sufficient to make one a holder of a note. See RCW 62A.3–201 cmt. 1 (a holder may possess a note "directly or through an agent"); Gleeson v. Lichty, 62 Wn. 656, 659, 114 P. 518 (1911) ("But, if we assume that the note was not in [the defendant's] actual possession, it was clearly under his control, and constructively therefore in his possession.")

Here, Litton had constructive possession of Selkowitz's note. The note was stored in Deutsche Bank's secure file facility for the entirety of the relevant time period. Pursuant to the servicing and trust agreement, Litton was entitled to demand the note from Deutsche Bank at any time, and Deutsche Bank was required to turn over the note to Litton within five days. This made Litton the holder of the note.

Selkowitz argues that Litton must physically possess the note to be a holder, and that constructive possession is insufficient. In support of this claim, Selkowitz points to

the following language from <u>Bain</u>: "a beneficiary must either <u>actually</u> possess the promissory note or be the payee." (Emphasis added). <u>Bain</u>, 175 Wn.2d at 104. However, while "<u>Bain</u> called for 'actual possession,' which could at first glance be understood to mean that only <u>physical</u> possession suffices...nothing in <u>Bain</u> suggested that the insertion of the word 'actual' was intended to create a departure from the UCC's definition of 'holder.' And nowhere in <u>Bain</u> did the Washington Supreme Court require 'physical' possession." <u>In re Butler</u>, 512 B.R. 643, 653 (Bankr. W.D. Wash.2014) (quoting <u>Bain</u>, 175 Wn.2d at 106)).

Moreover, the Washington Supreme Court recently recognized that a servicer may be a holder based on constructive possession of the note in <u>Brown v. Dep't of Commerce</u>, 2015 WL 6388153 (Oct. 22, 2015). In <u>Brown</u>, Brown executed a promissory note in favor of Countrywide Bank. Countrywide sold the note to Federal Home Loan Mortgage Corporation (Freddie Mac) and M&T Bank became the servicer of the note. In holding that M&T Bank was the holder of the note and entitled to enforce it, the court noted:

> Before the servicer institutes foreclosure proceedings, Freddie Mac provides the servicer with actual or constructive possession of the original note. See SERVICER'S GUIDE, <u>supra</u>, ch. 18.6(d), (e). Under the <u>Servicer's Guide</u>, the servicer is deemed to be in constructive possession of the note when the servicer commences a legal action or files the form (form 1036) that seeks actual possession of the note from Freddie Mac's note custodian. <u>Id.</u> at 18.6(d). Alternatively, if applicable state law requires the servicer to have actual possession of the note to institute foreclosure proceedings, the servicer submits a form 1036 to Freddie Mac's note custodian, who then delivers physical possession of the note to the servicer. <u>Id.</u> at 18.6(e).

<u>Brown</u>, 2015 WL 6388153, at *6 (Oct. 22, 2015).

Selkowitz next argues that "[t]he beneficiary must be both the actual holder and the owner of the Note to foreclose." Br. of Appellant at 27. But <u>Brown</u> also resolved this question in favor of the respondents, holding that "the statute's definition of 'holder' does not turn on ownership" and "a person <u>need not</u> own a note to be entitled to enforce the note." <u>Brown</u>, 2015 WL 6388153, at *7 (Oct. 22, 2015). <u>See</u> also <u>Trujillo v. Northwest Trustee Services, Inc.</u>, 181 Wn. App. 484, 497-98, 326 P.3d 768 (2014), <u>reversed in part on other grounds</u>, 183 Wn.2d 820, 355 P.3d 1100 (2015). ("The UCC does, however, make clear that the 'person entitled to enforce' a note is not synonymous with the 'owner' of the note...[I]t is the status of holder of the note that entitles the entity to enforce the obligation. Ownership of the note is not dispositive."[5]

Finally, Selkowitz argues that the note he signed contained a specific definition of "note holder" as the "party '<u>entitled to receive payments</u> under [the] Note'" and that, as a result, this court does "not need to analyze any other body of law" for its definition. Br. of Appellant at 22-23. But Selkowitz offers no relevant, controlling authority that the specific definition in the note alters who the holder is for purposes of the UCC or who the beneficiary is for purposes of the DTA.

## 2. Claims against QLS

Selkowitz first argues that QLS violated the CPA when it sent him a notice of default on April 23, 2010 before being appointed as successor trustee on May 20, 2010. However, under RCW 61.24.031(1)(a), a trustee, beneficiary, <u>or</u> authorized agent has authority to send a notice of default of a deed of trust. QLS was not acting as the

---

[5] In light of the Washington Supreme Court's decision in <u>Brown</u>, Selkowitz's argument that this court wrongly decided <u>Trujillo</u> is unavailing.

successor trustee when it sent the notice of default. Instead, the record shows that QLS sent the notice of default as agent for the beneficiary, Litton. Therefore, QLS did not engage in an unfair or deceptive practice by sending the notice of default.

Selkowitz argues that QLS's notice of default violated RCW 61.24.030(8)(l) by not identifying the beneficiary in its notice of default.[6] Although Selkowitz assigns error to this alleged deficiency, he fails to support this assignment of error with legal argument, which precludes our review.[7] See Howell v. Spokane & Inland Empire Blood Bank, 117 Wn.2d 619, 624, 818 P.2d 1056 (1991).

Selkowitz contends that QLS violated RCW 61.24.031(9) by executing the foreclosure loss mitigation form, which he argues "is required to be executed by the beneficiary, not the trustee." Br. of Appellant at 5. But a plain reading of the statute shows that a foreclosure loss mitigation form may be completed by "beneficiary or authorized agent" for the beneficiary. RCW 61.24.031(9). As we have already established that QLS was acting as Litton's agent, there was no violation.

---

[6] RCW 61.24.030(8)(l) provides that a notice of default must contain "the name and address of the owner of any promissory notes or other obligations secured by the deed of trust and the name, address, and telephone number of a party acting as a servicer of the obligations secured by the deed of trust."

[7] We note that, in any event, Brown establishes that such a claim is without merit:

A borrower can identify the note holder based on the information provided in the notice of default. The notice of default informs the borrower of the identity of the "servicer." RCW 61.24.030(8)(l). "Servicer" is not a legal term of art. Homeowners use the word to refer to the bank to which they send mortgage payments because they reasonably believe the servicer is the person entitled to enforce the note and because paying the servicer will discharge their obligation. That is true when the servicer holds the note. RCW 62A.3-301(i), -602(a). The inference that a "servicer" denotes a "holder" is therefore apparent . . . .

Brown, No. 90652-1, 2015 WL 6388153, at *13 (Oct. 22, 2015)

Finally Selkowitz argues that QLS violated its duty of good faith under RCW 61.24.010(4) and duty to comply with RCW 61.24.030(7)(a) by relying on Litton's beneficiary declaration without conducting an independent inquiry into the identity of the holder.[8] But Brown establishes that an agent of the beneficiary "can rely on a declaration consistent with its duty of good faith if the declaration unambiguously states the beneficiary is the actual holder." Brown, No. 90652-1, 2015 WL 6388153, at *15 (Oct. 22, 2015). Here, Litton's beneficiary declaration unambiguously states that it is the holder of Selkowitz's note. Thus, QLS did not violate its statutory obligations.

### 3. Claims against MERS

Selkowitz claims MERS violated the CPA when it appointed QLS as successor trustee. This is so, he asserts, because only a beneficiary has the power to appoint a trustee to proceed with a nonjudicial foreclosure and Bain establishes that MERS is "'an ineligible 'beneficiary' within the terms of the Washington Deed of Trust Act,' if it never held the promissory note or other debt instrument secured by the deed of trust." Bain, 175 Wn.2d at 110. We agree that if QLS's authority to send Selkowitz a notice of default was based on its appointment as successor trustee, this would constitute "an unfair or deceptive practice that serves to fulfill the first element of a CPA claim" because MERS did not have the authority to appoint a successor trustee. Bavand v. OneWest Bank, F.S.B., 176 Wn. App. 475, 506, 309 P.3d 636 (2013). However, as discussed above,

---

[8] RCW 61.24.010(4) provides that the "trustee or successor trustee has a duty of good faith to the borrower, beneficiary, and grantor." RCW 61.24.030(7)(a) requires that, "for residential real property, before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust. A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other obligation secured by the deed of trust shall be sufficient proof as required under this subsection."

QLS had authority to send the notice of default as Litton's agent. Thus, even if MERS had no authority to appoint QLS as successor trustee, Selkowitz was not injured by the appointment because QLS sent the notice of default under lawful authority.

C. Slander of Title

Selkowitz claims the trial court erred in dismissing his action for slander of title. The elements of a slander of title claim include: "(1) false words; (2) maliciously published; (3) with reference to some pending sale or purchase of property; (4) which go to defeat plaintiff's title; and (5) result in plaintiff's pecuniary loss." Rorvig v. Douglas, 123 Wn.2d 854, 859, 873 P.2d 492 (1994). Selkowitz contends that Litton made the following false representations to him during the proceedings: (1) that it was an agent for the beneficiary; (2) that it was an attorney in fact for the beneficiary; (3) that it was the beneficiary; (4) that it had determined Selkowitz was in default without having the authority to do so as the beneficiary; and (5) that it was the holder of the note. However, Selkowitz fails to establish the statements were false because Litton was the beneficiary and holder of the note and had authority to direct QLS to send a notice of default. Moreover, because the trustee's sale did not take place, Selkowitz fails to establish that the allegedly false statements were made in connection with a "pending sale" of the property. For these reasons, summary judgment dismissal of the slander of title claim was appropriate.

D. Attorney Fees

Both Selkowitz and Litton request attorney fees and costs pursuant to RAP 18.1(a). Under RAP 18.1, the prevailing party is entitled to attorney fees and costs on appeal if requested in the party's opening brief and if "applicable law grants to a party

the right to recover . . . ." RAP 18.1(a), (b). Both the note and the deed of trust contain attorney fee provisions.

We deny Selkowitz's request for fees and costs because he is not the prevailing party. Selkowitz argues that Litton is not entitled to fees because it was not an original party to the note or the deed of trust. However, the note provides that if Selkowitz is found in default, "the Note Holder will have the right to be paid back...for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees." CP at 827. As Litton is the noteholder and the issues involved in this appeal were resolved in its favor, we award Litton reasonable attorney fees and costs.

We affirm the summary judgment dismissal of Selkowitz's claims. We award attorney fees to Litton.

_Spearman, C.J._

WE CONCUR:

_Leach, J._                    _Dwyer, J._

-12-