[No. 19646–4–I.   Division One.   December 28, 1987.]

GARY RYDER, *Appellant,* v. THE PORT OF SEATTLE,
*Respondent.*

*Kelby D. Fletcher,* for appellant.

*William R. Hickman* and *Reed, McClure, Moceri, Thonn & Moriarty,* for respondent.

SWANSON, J.—Gary Ryder appeals the summary judgment order in favor of the Port of Seattle, a municipal corporation, claiming that the entry of summary judgment was error in that (1) his discrimination claims do not allege an unfair labor practice under RCW 41.56.140 but rather arbitrary and capricious action by a public employer so that they are not barred by the RCW 41.56.160 statute of limitations and his failure to exhaust his administrative remedies and (2) his claims of discrimination based upon union membership status and nepotism and of a 42 U.S.C. § 1983 violation improperly were dismissed on the merits.

The Port and the International Longshoremen's and Warehousemen's Union, Local 9 (Local 9) had a collective bargaining agreement with the expressed purpose "to provide for wages, benefits, and contract conditions as applied to the employment of warehousemen at the Port." The agreement's section 22 provides for seniority employment. The agreement subsequently was amended by a revised supplemental agreement, which contains an amended seniority provision which states in part:

1) *"A" List*—Seniority employees who are employed as of the signing of this Revised Supplemental Agreement shall be "grandfathered" under the conditions provided for in this section.

   The balance of the "A" list shall be comprised of new hires selected on the basis of qualifications and experience with due consideration being given to Affirmative Action.

   The Port shall maintain a total of eighty–two (82) seniority employees on the "A" list including the "grandfathered" employees and new hires.

2) *"B" List*—After the balance of the "A" list has been selected, the "B" list shall be selected based on qualifications and experience with due consideration being given to Affirmative Action. There shall be a minimum of 20 employees maintained on the "B" list.

3) *Casual Employment*—Casuals may be employed after the additional "A" list and the "B" list employees have been hired.

Under the amended seniority provision, 24 employees were to be placed on the "A" List and 20 employees on the "B" List. On August 13, 1985, employment questionnaires were sent to eligible individuals, and 84 persons responded. A 9–member panel comprised of Port managers and Local 9 foremen selected the 44 new seniority employees from among the questionnaire respondents.

The selection was made in accordance with written evaluation guidelines which required that each candidate be given a numerical rating for each of the six specified factors: quality of work, quantity of work, dependability, cooperation, initiative, and experience. The selections were

made according to the total rating scores based upon these factors. Following the selection of the top 44 candidates, pursuant to the written evaluation guidelines the Port's equal employment opportunity officer reviewed the selections to ensure adequate representation of affected classes; no changes were found to be necessary, and the selections were finalized on September 25, 1985.

Ryder was one of the 84 eligible casual laborers considered by the selection panel. Because his total rating score was not among the top 44, he was not selected for the seniority lists.

Ryder filed a grievance with Local 9 pursuant to the collective bargaining agreement's grievance and arbitration procedure for disputes involving the application or interpretation of the agreement. Finding no violations in the Port's selection process, the union decided not to pursue the grievance. Ryder never filed an unfair labor practice complaint with the Public Employment Relations Commission (PERC) as provided under RCW 41.56.

On July 10, 1986, Ryder commenced an action in superior court against the Port seeking, by an amended complaint, damages; an injunction restraining the Port from using impermissible employment selection processes; placement on the seniority roster established by the Port and Local 9; a declaratory judgment that the Port's selection process violated Ryder's rights under 42 U.S.C. § 1983 and the federal and state constitutions; and attorney fees and costs pursuant to 42 U.S.C. § 1988. He did not allege that the union wrongfully had refused to pursue his grievance.

Ryder sought discovery of facts pertaining to the selection process through interrogatories and requests for the production of certain documents. The Port objected to discovery on grounds that Ryder's complaint was subject to PERC's exclusive and primary jurisdiction and the RCW 41.56 statute of limitations. The Port then filed a summary judgment motion supported in part by the affidavit of Jan Kelly, the Port's manager of marine operations and captain of the selection panel. Ryder's response to the Port's

motion was supported by the declaration of Sam Moss. Summary judgment was entered in the Port's favor.

EXHAUSTION OF REMEDIES

The purpose of summary judgment is to avoid a useless trial. *Olympic Fish Prods., Inc. v. Lloyd*, 93 Wn.2d 596, 602, 611 P.2d 737 (1980). Summary judgment is appropriate where the pleadings, depositions, admissions on file, and affidavits, if any, show that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. On review of a summary judgment order, the appellate court takes the position of the trial court, assuming facts most favorable to the nonmoving party. *Del Guzzi Constr. Co. v. Global Northwest Ltd.*, 105 Wn.2d 878, 882, 719 P.2d 120 (1986).

Here Ryder does not contend that summary judgment was improper because a genuine material factual issue exists. Rather, he argues that the entry of summary judgment was error in that his claims are not barred by the running of the RCW 41.56.160 limitation period or the failure to exhaust his administrative remedies since the allegedly improper Port action at issue here is not an unfair labor practice under RCW 41.56.140(1). Thus the question is whether the Port was entitled to a judgment as a matter of law. *Del Guzzi Constr. Co. v. Global Northwest Ltd.*, *supra.*

The specific issue is whether the challenged Port action fell within the ambit of unfair labor practices under RCW 41.56.140(1) such that Ryder's claims here are barred by the RCW 41.56.160 statute of limitations and the failure to exhaust administrative remedies.

Citing *Port of Edmonds v. Public Empl. Relations Comm'n*, 103 Wn.2d 331, 337, 692 P.2d 814 (1985), Ryder argues that RCW 41.56's mandatory collective bargaining provisions do not apply to port districts so that the Port is not a "public employer" and his discrimination complaint does not allege an unfair labor practice under RCW 41.56-.140(1). A public employer is defined as

any officer, board, commission, council, or other person or body acting on behalf of any public body governed by this chapter as designated by RCW 41.56.020, or any subdivision of such public body.

RCW 41.56.030(1).[1] RCW 41.56.020[2] states in part:

This chapter shall apply to any county or municipal corporation, or any political subdivision of the state of Washington except as otherwise provided by . . . 53.18 RCW.

The court in *Port of Edmonds,* construing RCW 41.56-.020 as it applied to an action brought before the 1983 amendment of both RCW 41.56.020 and RCW 53.18, held that RCW 41.56's mandatory collective bargaining provisions did not apply to port districts so that PERC had no jurisdiction in that case. However, as the *Port of Edmonds* court itself noted, in 1983 RCW 53.18 was amended expressly to provide that "[p]ort districts and their employees shall be covered by the provisions of chapter 41.56 RCW except as provided otherwise in this chapter", RCW 53.18.015. Thus under RCW 41.56.020 and 53.18.015, except as otherwise provided in RCW 53.18, RCW 41.56 applies to port districts and their employees so that if Ryder's claims alleged an unfair labor practice under RCW 41.56.140(1), PERC had jurisdiction here and Ryder's claims are now barred by the running of the RCW 41.56.160 limitation period and the failure to exhaust administrative remedies.

The question is whether Ryder's claims allege an unfair labor practice under RCW 41.56.140(1), which provides:

It shall be an unfair labor practice for a public employer:
(1) To interfere with, restrain, or coerce public employees in the exercise of their rights guaranteed by this chapter;

---

[1]When RCW 41.56.030 was amended in 1987, subsection 1 was not modified. Laws of 1987, ch. 135, § 2, p. 449.

[2]RCW 41.56.020 was amended by Laws of 1987, ch. 135, § 1, p. 449.

*Clallam Cy. v. Public Empl. Relations Comm'n,* 43 Wn. App. 589, 597, 719 P.2d 140, *review denied,* 106 Wn.2d 1013 (1986); *Council of Cy. & City Employees v. Spokane Cy.,* 32 Wn. App. 422, 428, 647 P.2d 1058, *review denied,* 98 Wn.2d 1002 (1982).[3]

Ryder argues that an unfair labor practice under RCW 41.56.140(1) does not include alleged discrimination based upon union membership status since unlike the unfair labor practice provisions in the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*; the Educational Employment Relations Act, RCW 41.59; and the community college collective bargaining statute, Laws of 1987, ch. 314, p. 1111, the Public Employees' Collective Bargaining Act's RCW 41.56-.140(1) does not expressly prohibit discrimination on the basis of union membership status.

■ The Port responds that Ryder cannot raise for the first time on appeal the argument that the Port's action does not constitute an unfair labor practice under the statute. We agree. "An issue, theory or argument not presented at trial will not be considered on appeal." *Herberg v. Swartz,* 89 Wn.2d 916, 925, 578 P.2d 17 (1978).

■ Ryder's discrimination claims thus are deemed to allege an unfair labor practice under RCW 41.56.140(1), and his claims are barred by the running of the RCW 41.56.160 limitation period and his failure to exhaust administrative remedies available through PERC, *South Hollywood Hills Citizens Ass'n v. King Cy.,* 101 Wn.2d 68, 73, 677 P.2d 114 (1984). Moreover, Ryder's 42 U.S.C. § 1983 claim similarly is barred on this ground. *McConnell v. Seattle,* 44 Wn. App. 316, 323, 722 P.2d 121, *review denied,* 107 Wn.2d 1007 (1986).

---

[3]In *Black v. Richland Sch. Dist. 400,* 3 Wash. Pub. Lab. L. Rptr. 545, 551, *aff'd,* 3 Wash. Pub. Lab. L. Rptr. 759 (Pub. Empl. Relations Comm'n 1985), PERC affirmed the hearing examiner's findings of fact, conclusions of law and order where the complainant had alleged discrimination because of her prior decertification activities. The examiner's conclusion of law 2 was that "the employer and the union did not discriminate against the claimant and did not violate RCW 41.56.140(1) or (4)."

[A]dministrative remedies must be exhausted before the courts will intervene: (1) "when a claim is cognizable in the first instance by an agency alone"; (2) when the agency's authority "'establishes clearly defined machinery for the submission, evaluation and resolution of complaints by aggrieved parties"; and (3) when the "relief sought . . . can be obtained by resort to an exclusive or adequate administrative remedy".

*State v. Tacoma–Pierce Cy. Multiple Listing Serv.*, 95 Wn.2d 280, 284, 622 P.2d 1190 (1980) (quoting from *Retail Store Employees, Local 1001 v. Washington Surveying & Rating Bur.*, 87 Wn.2d 887, 906–07, 909, 558 P.2d 215 (1976)); *accord, South Hollywood Hills Citizens Ass'n v. King Cy., supra.* The doctrine of exhaustion of administrative remedies is "founded upon the belief that the judiciary should give proper deference to that body possessing expertise in areas outside the conventional experience of judges." *South Hollywood Hills Citizens Ass'n v. King Cy., supra* at 73.

Here the claim that the seniority list selection was based upon impermissible criteria is cognizable in the first instance by PERC, which has expertise in interpreting labor relations law, *Public Empl. Relations Comm'n v. Kennewick*, 99 Wn.2d 832, 842, 664 P.2d 1240 (1983). Further, RCW 41.56.160–.190 establish a clearly defined machinery for the submission, evaluation and resolution of complaints by aggrieved parties. Last, the relief sought, placement on the seniority list, could have been obtained by resort to the adequate administrative remedy provided for under RCW 41.56.

█ In his memorandum opposing the summary judgment motion, Ryder claims that by bringing an additional constitutional claim, he falls within an exception to the exhaustion requirement. The exhaustion requirement will be waived where the constitutionality of the agency's action is challenged. *South Hollywood Hills Citizens Ass'n v. King Cy., supra* at 74. However, this exception generally is limited to raising the unconstitutionality of an administrative

action *as a defense* in a judicial proceeding to enforce an administrative rule. "Where a party affirmatively seeks declaratory or injunctive relief, . . . it must show that its remedies have been exhausted in order to show it has standing to raise even a constitutional issue." *Ackerley Communications, Inc. v. Seattle,* 92 Wn.2d 905, 908–09, 602 P.2d 1177 (1979), *cert. denied,* 449 U.S. 804 (1980).

> If . . . an administrative proceeding might leave no remnant of the constitutional question, the administrative remedy plainly should be pursued.

*Public Utils. Comm'n v. United States,* 355 U.S. 534, 539–40, 2 L. Ed. 2d 470, 78 S. Ct. 446 (1958), *quoted in Ackerley Communications, Inc. v. Seattle, supra* at 909.

In a recent case involving a constitutional taking claim, the court held that the exhaustion requirement was inapplicable where the right of appeal was not to an administrative agency but rather to the superior court and where no record on the constitutional taking issue could have been made for superior court review since no evidence or authority was presented that this issue could have been raised at a meeting of the Redmond City Council. *Valley View Indus. Park v. Redmond,* 107 Wn.2d 621, 633–34, 733 P.2d 182 (1987).

Here Ryder's statutory right to file an unfair labor practice complaint was with an administrative agency, not the court, and PERC's resolution of the question as to whether impermissible criteria were used in the seniority list selection would have left no remnant of the constitutional question. Thus Ryder did not fall within the constitutional claim exception to the exhaustion requirement.

■ An additional basis for our resolution of the exhaustion issue is provided by *Lew v. Seattle Sch. Dist. 1,* 47 Wn. App. 575, 736 P.2d 690 (1987). Under *Lew,* at 578–79, where the union declines to process a grievance, as in the instant case, an action for breach of contract is barred by a failure to exhaust available contractual remedies if the aggrieved employee fails to allege that the union wrongfully

and in bad faith refused to process the grievance.[4] Ryder has failed to make the requisite allegation here.

### ARBITRARY AND CAPRICIOUS ACTION

Citing *Pierce Cy. Sheriff v. Civil Serv. Comm'n*, 98 Wn.2d 690, 658 P.2d 648 (1983) and *Williams v. Seattle Sch. Dist. 1*, 97 Wn.2d 215, 643 P.2d 426 (1982), Ryder argues that he is entitled to judicial review without first exhausting his administrative remedies based upon the courts' inherent power to review arbitrary and capricious administrative actions. These two cases are distinguishable from the instant case. Both cases involved questions regarding potential bases for review of an administrative agency's decision where no statutory basis for judicial review was available to the party seeking such review. *Pierce Cy. Sheriff v. Civil Serv. Comm'n, supra* at 693; *Williams v. Seattle Sch. Dist. 1, supra* at 218, 220–21. Thus in each case the court looked to the asserted claim that review was nevertheless permissible under the court's inherent power to review arbitrary and capricious administrative actions.

In the instant case had Ryder timely filed a complaint with PERC pursuant to RCW 41.56.160, judicial review of PERC's decision would have been available under RCW 34.04.130 of the administrative procedure act. *See Clallam Cy. v. Public Empl. Relations Comm'n*, 43 Wn. App. 589, 596, 719 P.2d 140, *review denied*, 106 Wn.2d 1013 (1986). Thus had Ryder exhausted his administrative remedies, judicial review would have been available without resort to the court's inherent power of review.

Moreover, in both of these cited cases the parties exhausted their available administrative remedies before

---

[4]"In part, this requirement arises out of the fact that the union is the agent of the aggrieved employee, and in the absence of evidence showing bad faith, discrimination, or arbitrary conduct on the part of the union, its decision to forgo exhaustion of grievance procedures binds the employee and forecloses judicial action on the contract." *Lew v. Seattle Sch. Dist. 1*, 47 Wn. App. 575, 578, 736 P.2d 690 (1987).

seeking judicial review so that the exhaustion requirement was not an issue, as it is in the instant case. Where a party fails first to exhaust his available administrative remedies before seeking judicial review, the policy reasons underlying the exhaustion doctrine would be thrown out the window if the party were permitted to enter the courthouse through the back door by means of the court's inherent power of review.

## DECISION ON THE MERITS

■ In any event, we have determined that summary judgment was proper on the merits of both the discrimination and 42 U.S.C. § 1983 claims. To preclude summary judgment,

> [o]nce the moving party has met its burden of presenting factual evidence showing that it is entitled to judgment as a matter of law, the burden shifts to the nonmoving party to set forth specific facts showing that a genuine issue exists for trial.

*Hiskey v. Seattle,* 44 Wn. App. 110, 112, 720 P.2d 867, *review denied,* 107 Wn.2d 1001 (1986). "If [the nonmoving party] does not so respond, summary judgment, if appropriate, shall be entered against him." CR 56(e); *see Seven Gables Corp. v. MGM/UA Entertainment Co.,* 106 Wn.2d 1, 12–13, 721 P.2d 1 (1986).

Here the affidavit of Jan Kelly, the Port's manager of marine operations who was the captain of the selection panel, states:

> Each candidate was discussed and rated with respect to quality of work, quantity of work, dependability, cooperation, and initiative in accordance with the written "Evaluation Guidelines" which had been given to us. The successful candidates were then selected based upon their cumulative scores for the above factors as well as Port experience. These were the sole factors on which candidates were rated and no weight was given to union membership or nepotistic relationships.

Since Kelly's affidavit, based upon personal knowledge, states that union membership and nepotism were not considerations in the seniority selection, the burden shifted to

Ryder to set forth specific facts showing that a genuine issue existed for trial.

Ryder produced the affidavit of Sam Moss which states that at a meeting with Larry Wheeler of the Port, Wheeler said that "we gave preference to union members." Moss' affidavit further states that an ILWU, Local 9, business agent said at a meeting that "the Port of Seattle is willing to let us select who we want for the seniority list."

Summary judgment affidavits must "set forth such facts as would be admissible in evidence". CR 56(e); *Guntheroth v. Rodaway,* 107 Wn.2d 170, 178, 727 P.2d 982 (1986). Here the business agent's alleged statement is inadmissible hearsay, ER 801(c), and Ryder offers no exception to the hearsay rule under which the statement would be admissible as evidence. ER 802; *Washington Irrig. & Dev. Co. v. Sherman,* 106 Wn.2d 685, 687–88, 724 P.2d 997 (1986). Wheeler's statement similarly is hearsay, and while Ryder calls him a "speaking agent," Reply Brief of Appellant, at 9, he makes no showing that Wheeler was a speaking agent acting within the scope of his authority to make the statement for the Port such that Wheeler's statement would be admissible as a nonhearsay statement. ER 801(d)(2)(iv); *Blodgett v. Olympic Sav. & Loan Ass'n,* 32 Wn. App. 116, 126, 646 P.2d 139 (1982). Further, Ryder concedes that since Wheeler was not involved in the selection process, he could have no personal knowledge of the facts surrounding the selection process as required by CR 56(e). Brief of Appellant, at 23. Thus, Wheeler's hearsay statement, based upon hearsay, lacks evidentiary value.

Ryder has not offered specific facts to raise a genuine issue as to whether nepotism was considered in the selection process, so summary judgment on this claim was proper. *Seven Gables v. MGM/UA Entertainment Co., supra.* While Ryder claims that he was denied adequate discovery, this alleged error has been waived on appeal by his failure to make a proper assignment of error in this regard. RAP 10.3(g); *Bender v. Seattle,* 99 Wn.2d 582, 599, 664 P.2d 492 (1983).

We turn now to Ryder's claim based upon 42 U.S.C. § 1983, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

*See Kuehn v. Renton Sch. Dist. 403,* 103 Wn.2d 594, 598, 694 P.2d 1078 (1985).

■ *Williams v. Treen,* 671 F.2d 892 (5th Cir. 1982), *cert. denied,* 459 U.S. 1126 (1983), states:

> [A] § 1983 plaintiff must allege a deprivation of a federally protected right in order to set forth a *prima facie* case, *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); violation of state law alone does not give rise to a cause of action under § 1983. *Bills v. Henderson,* 631 F.2d 1287 (6th Cir. 1980).

*Williams,* at 900; *see Kuehn v. Renton Sch. Dist. 403, supra.* Here even assuming that Ryder has alleged the deprivation of a federally protected right, his section 1983 claim properly was dismissed since he has made no showing that the alleged deprivation was caused by any action taken pursuant to official municipal policy such that municipal liability was incurred. *Pembaur v. Cincinnati,* 475 U.S. 469, 89 L. Ed. 2d 452, 106 S. Ct. 1292, 1294 (1986).

> "[O]fficial policy" often refers to formal rules or understandings—often but not always committed to writing—that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time.

*Pembaur,* at 480–81. Nevertheless, a decision to adopt a specific course of action in a particular situation which is properly made by a government's authorized decision makers represents an act of official government policy. *Pembaur v. Cincinnati, supra.*

[N]ot every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.

(Footnote omitted.) *Pembaur v. Cincinnati, supra* at 481–82.

In the instant case the revised supplemental collective bargaining agreement and evaluation guidelines embody the Port's official policy that the seniority list selection was to be based upon certain job–related qualifications and experience as specifically delineated in the guidelines. Even assuming, without deciding, that Ryder has alleged the deprivation of a federally protected right, he has not set forth facts showing that the selection panel was comprised of decision makers who possessed the final authority to establish municipal policy with respect to the selection of seniority employees and thus that the Port's action was taken pursuant to official municipal policy to subject the Port to section 1983 liability. The mere fact that the panel members possessed some discretion in the exercise of their particular function does not render the Port liable under section 1983 for the exercise of that discretion. *Pembaur v. Cincinnati, supra.*

The summary judgment order is affirmed.

SCHOLFIELD, C.J., and PEKELIS, J., concur.