FILED
COURT OF APPEALS
DIVISION II

2015 MAR 24 AM 8:33

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| KEITH PELZEL,<br><br>       Appellant,<br><br> v.<br><br>NATIONSTAR MORTGAGE, LLC;<br>QUALITY LOAN SERVICE<br>CORPORATION OF WASHINGTON;<br>HOMECOMINGS FINANCIAL NETWORK,<br>INC., MORTGAGE ELECTRONIC<br>REGISTRATION SYSTEMS, INC., ALL<br>PERSONS UNKNOWN, CLAIMING ANY<br>VALID SUBSISTING INTEREST, AND<br>RIGHT TO THE POSSESSION IN THE<br>PROPERTY DESCRIBED IN THE<br>COMPLAINT ADVERSE TO PLAINTIFF'S<br>TITLE, OR ANY CLOUD ON PLAINTIFF'S<br>TITLE THERETO; and DOES I-X,<br>INCLUSIVE,<br><br>       Respondents. | No. 43294-3-II<br><br><br><br>UNPUBLISHED OPINION |

WORSWICK, P.J. — Keith Pelzel sued Nationstar Mortgage, LLC, Quality Loan Services Corporation of Washington, Homecomings Financial Network, Inc., and Mortgage Electronic Registration Systems, Inc. (MERS) to prevent Quality's nonjudicial foreclosure of a deed of trust secured by Pelzel's property. Pelzel also sought damages under the Consumer Protection Act[1] (CPA). The superior court granted summary judgment in favor of defendants. Pelzel appeals,

---

[1] Chapter 19.86 RCW.

arguing summary judgment was inappropriate because under the deed of trust act[2] (DTA) (1) Nationstar was not a beneficiary, (2) Nationstar had no authority to appoint a successor trustee, (3) Quality lacked authority to initiate a nonjudicial foreclosure of Pelzel's property on Nationstar's behalf, (4) MERS's assignment of the deed of trust and note to Nationstar was invalid, and (5) Nationstar failed to prove it was a servicer or agent for the note's owner. Pelzel also argues summary judgment was inappropriate because under the CPA, (6) the defendants deceived Pelzel by misrepresenting Quality's authority to initiate a nonjudicial foreclosure of Pelzel's property on Nationstar's behalf, (7) Quality deceived Pelzel by falsely identifying Nationstar as the note's owner in the "notice of default" sent to Pelzel, and (8) MERS deceived Pelzel by assigning the deed of trust and note as the nominee of Homecomings, the lender and original beneficiary. We reject Pelzel's arguments and affirm.

## FACTS

A.    *The Promissory Note and Deed of Trust*

In 2003, Keith Pelzel borrowed $104,000 from the lender Homecomings Financial Network, Inc. Pelzel signed a promissory note promising to repay the loan, and secured the note with a deed of trust against his property. The deed of trust listed Pelzel as the borrower, Homecomings as the lender, and Fidelity National Title as the trustee. The deed of trust then said the following about MERS:

> MERS is a separate corporation that is acting solely as a nominee for [Homecomings] and [Homecomings'] successors and assigns. **MERS is the beneficiary under this Security Instrument.**

---

[2] Chapter 61.24 RCW.

No. 43294-3-II

Clerk's Papers (CP) at 37.

Homecomings possessed the deed of trust and the note. Then, at some time prior to January 23, 2009, Homecomings indorsed the note to GMAC Mortgage Company, who in turn indorsed the note in blank. After the note was indorsed in blank, on January 23, 2009, Nationstar took physical possession of the note. Nationstar had physical possession of the note at the time of the motion for summary judgment.

At some point, the Federal National Mortgage Association (Fannie Mae) purchased the loan represented by the note, making Fannie Mae the note's owner. *See Trujillo v. Nw. Tr. Servs., Inc.*, 181 Wn. App. 484, 487-89, 326 P.3d 768 (2014). But Fannie Mae did not take physical possession of the note.

On November 13, 2009, Nationstar appointed Quality as the deed of trust's successor trustee. From then onward, Quality served as the deed of trust's successor trustee.

On November 19, 2009, MERS, as nominee for Homecomings, executed a document purporting to assign both the deed of trust and the note to Nationstar. MERS executed this document even though Homecomings had already indorsed the note to GMAC and even though Nationstar had already obtained physical possession of the note.[3]

B.      *Notice of Default, Declaration of Ownership, and Trustee's Sale*

In November of 2009, Quality, as successor trustee, sent Pelzel a notice of default, which stated in part:

> The current *owner*/beneficiary of the Note secured by the Deed of Trust is: Nationstar Mortgage LLC

---

[3] From the record it appears MERS may have been attempting to assign the *deed of trust* to Nationstar, but failed to remove language assigning the note.

3

No. 43294-3-II

The Loan Servicer managing your loan, and whom you should contact about your loan is:
Nationstar Mortgage LLC

CP at 17 (emphasis added).

In January of 2010, Nationstar's authorized agent signed a "Declaration of Ownership," which stated under penalty of perjury that Nationstar was "actual holder of" the note.   CP at 176. In September of 2010, relying on this declaration of Nationstar's agent, Quality initiated a nonjudicial foreclosure of Pelzel's property by scheduling a trustee's sale of Pelzel's property.

C.    *Pelzel's Complaint and Summary Judgment*

Prior to the trustee's sale, Pelzel filed a complaint against Nationstar, Quality, Homecomings, and MERS, making claims for, among other things, (1) defect in trustee's sale under the DTA, (2) defective initiation of foreclosure under the DTA, and (3) violation of the CPA.  Pelzel requested many forms of relief, including (1) declaratory relief, (2) an order vacating the foreclosure sale, and (3) damages under the CPA.  In response to Pelzel's complaint, Quality stopped the trustee's sale.

The defendants moved for summary judgment, and the superior court granted summary judgment against Pelzel on all claims.  The superior court ruled that no cause of action for wrongful *initiation* of foreclosure existed, and that the lack of a completed foreclosure sale rendered Pelzel unable to prove damages on his other claims.  Pelzel appeals.

ANALYSIS

We review summary judgment orders de novo.  *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). Summary judgment is appropriate if, when viewing the

No. 43294-3-II

facts in the light most favorable to the nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. 164 Wn.2d at 552.

Interpretation of a statute is a question of law we also review de novo. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Our objective in interpreting a statute is to carry out the legislature's intent. *Arborwood Idaho, L.L.C. v. City of Kennewick*, 151 Wn.2d 359, 367, 89 P.3d 217 (2004). "The 'plain meaning' of a statutory provision is to be discerned from the ordinary meaning of the language at issue, as well as from the context of the statute in which that provision is found, the related provisions, and the statutory scheme as a whole." *City of Spokane v. Rothwell*, 166 Wn.2d 872, 876-77, 215 P.3d 162 (2009). "In general, words are given their ordinary meaning, but when technical terms and terms of art are used, we give these terms their technical meaning." *Swinomish Indian Tribal Cmty. v. Dep't of Ecology*, 178 Wn.2d 571, 581, 311 P.3d 6 (2013).

Turning to Pelzel's arguments, we examine and reject his claims for relief under the DTA as well as his claims for monetary damages under the CPA.[4]

I. DECLARATORY RELIEF UNDER THE DTA

At the superior court, Pelzel requested "a declaration of the rights and duties of the parties, specifically Defendants Quality Loan and Nationstar initiated a defective foreclosure of the Property." CP at 12. Washington courts may issue declaratory judgments under the Uniform

---

[4] Defendants argue that Pelzel waived his CPA claims by failing to include an assignment of error challenging the superior court's denial of his CPA claims. *See Ryder v. Port of Seattle*, 50 Wn. App. 144, 155, 748 P.2d 243 (1987). Because Pelzel argues the CPA throughout his brief, we use our discretionary authority to consider Pelzel's claim. *See* RAP 2.5(a); *Roberson v. Perez*, 156 Wn.2d 33, 39, 123 P.3d 844 (2005).

5

No. 43294-3-II

Declaratory Judgments Act[5] to declare the rights of the parties if the plaintiff shows that a justiciable controversy exists. *To–Ro Trade Shows v. Collins*, 144 Wn.2d 403, 410-11, 27 P.3d 1149 (2001). Because Pelzel has made such a showing, we consider his arguments regarding declaratory relief for alleged DTA violations.[6]

Under the DTA, a deed of trust is a three-party transaction. *Bain v. Metro Mortg. Grp., Inc.*, 175 Wn.2d 83, 92-93, 285 P.3d 34 (2012). Land is conveyed by a borrower (the grantor), to a third party (the trustee), who holds title in trust for the lender (the beneficiary), as security for credit or a loan. 175 Wn.2d at 93. The deed of trust protects the beneficiary by giving it the power to nominate a trustee, who then has the power to sell the property at a trustee's sale on the beneficiary's behalf if the borrower defaults. 175 Wn.2d at 88; *Rucker v. Novastar Mortg., Inc.*, 177 Wn. App. 1, 10-11, 311 P.3d 31 (2013).

MERS maintains a private electronic registration system for tracking ownership of mortgage related debt. *Bain*, 175 Wn.2d at 95. In many states, including Washington, MERS is also often listed as the *beneficiary* of a deed of trust. 175 Wn.2d at 88. In *Bain*, our Supreme Court held "MERS is an ineligible 'beneficiary within the terms of the Washington Deed of Trust Act,' if it never held the promissory note or other debt instrument secured by the deed of trust." 175 Wn.2d at 110 (internal quotation marks omitted).

---

[5] Chapter 7.24 RCW.

[6] At the superior court, Pelzel requested an injunction to vacate the trustee sale. We do not consider Pelzel's claim for injunctive relief because Quality already stopped the trustee's sale and the record does not show that a new trustee's sale was initiated. Thus, there was no trustee sale for an injunction to stop.

Pelzel argues that when Quality initiated the nonjudicial foreclosure (1) Nationstar was not the lawful beneficiary under the DTA, (2) Nationstar had no authority to appoint a successor trustee, (3) Quality's initiation of a nonjudicial foreclosure of Pelzel's property on Nationstar's behalf was improper, (4) Nationstar's foreclosure was improper, and (5) Quality lacked authority to initiate a nonjudicial foreclosure against Pelzel's property on Nationstar's behalf. We reject Pelzel's arguments and hold that Nationstar was the deed of trust's beneficiary with authority to appoint Quality as successor trustee, which gave Quality authority to initiate a nonjudicial foreclosure of Pelzel's property on Nationstar's behalf under RCW 61.24.030(7). We further hold that neither any defect in MERS's assignment of the note and deed of trust nor Nationstar's relationship to the deed of trust's owner Fannie Mae affected Quality's authority to initiate a nonjudicial foreclosure of Pelzel's property on Nationstar's behalf.

A.      *Nationstar's Status as Beneficiary Under the DTA*

Pelzel argues Nationstar was not the lawful beneficiary under the DTA. We disagree.

1. *Definition of Beneficiary*

The deed of trust's beneficiary is traditionally the lender who loaned money to the homeowner. *Bain*, 175 Wn.2d at 88. But lenders are free to sell the secured debt, typically by selling the note. 175 Wn.2d at 88. The DTA recognizes that the deed of trust's beneficiary at any one time might not be the original lender. 175 Wn.2d at 88. Therefore, RCW 61.24.005(2) of the DTA defines "beneficiary" broadly as the "holder of the instrument or document evidencing the obligations secured by the deed of trust." 175 Wn.2d at 88.

Here, the note was the instrument or document evidencing the obligations secured by the deed of trust. Thus, the note's holder was the beneficiary under the DTA. Accordingly, we must determine whether Nationstar was the note's holder.

### 2. *Definition of "Holder"*

The Uniform Commercial Code[7] (UCC) guides our interpretation of the DTA's terms.[8] *Bain*, 175 Wn.2d at 104. The UCC defines "holder" as "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." RCW 62A.1-201(21)(A). A note indorsed in blank is payable to bearer. RCW 62A.3-205(b).

Here, the undisputed evidence establishes that Nationstar was the note's holder. Pelzel does not challenge that the note was indorsed in blank or that Nationstar had actual physical possession of it after it was indorsed in blank. Once the note was indorsed in blank, it became payable to bearer. Because Nationstar had physical possession of the note and the note was payable to bearer, Nationstar was the note's holder. Thus, Nationstar was the holder of the instrument evidencing the obligations secured by the deed of trust, which made Nationstar the deed of trust's beneficiary under the DTA.

B.    *Nationstar's Authority To Appoint a Successor Trustee*

Pelzel argues Nationstar had no authority to appoint a successor trustee. We disagree.

---

[7] Title 62A RCW.

[8] Pelzel argues that we should not use the UCC to guide its interpretation of the DTA's terms. But our Supreme Court has established that the UCC guides our interpretation of the DTA's terms. *Bain*, 175 Wn.2d at 104.

Only a lawful beneficiary has the power to appoint a successor to the original trustee named in the deed of trust. *Bavand v. OneWest Bank, F.S.B.*, 176 Wn. App. 475, 486, 309 P.3d 636 (2013). Only a properly appointed trustee may proceed with a nonjudicial foreclosure of real property. 176 Wn. App. at 486-87.

As discussed above, Nationstar was a lawful beneficiary because it held the note. Thus, Nationstar had authority to appoint a successor trustee.

C.    *Quality's Authority To Initiate a Nonjudicial Foreclosure Under RCW 61.24.030(7)*

Pelzel argues that under RCW 61.24.030(7), Quality lacked authority to initiate a nonjudicial foreclosure against Pelzel's property on Nationstar's behalf. Again, we disagree.

RCW 61.24.030 provides that "[i]t shall be requisite to a trustee's sale":

> (7)(a) That, for residential real property, before the notice of trustee's sale is recorded, transmitted, or served, the trustee shall have proof that *the beneficiary is the owner of any promissory note* or other obligation secured by the deed of trust. A declaration by the beneficiary made under the penalty of perjury stating that *the beneficiary is the actual holder of the promissory note* or other obligation secured by the deed of trust shall be sufficient proof as required under this subsection.

> (b) Unless the trustee has violated his or her duty [of good faith] under RCW 61.24.010(4), the trustee is entitled to rely on the beneficiary's declaration as evidence of proof required under this subsection.

The note's *holder* is the person or entity entitled to enforce the note. *Trujillo*, 181 Wn. App. at 500. Conversely, the note's *owner* is the person or entity entitled to the note's economic benefits. 181 Wn. App. at 497. Here, Nationstar was the note's holder, but Fannie Mae was the note's owner.

Under RCW 61.24.030(7)(a), a successor trustee needs proof that the beneficiary is the note's *holder*, not that the beneficiary is the note's owner, to initiate a nonjudicial foreclosure. *Trujillo*, 181 Wn. App. at 502. Accordingly, under RCW 61.24.030(7)(b), the declaration from

9

Nationstar's authorized agent was sufficient proof of Nationstar's status as the note's holder for Quality to initiate a nonjudicial foreclosure against Pelzel's property.

    1. RCW 61.24.030(7)(a): *Proof Required To Initiate a Nonjudicial Foreclosure*

Pelzel argues RCW 61.24.030(7)(a) requires a successor trustee to have proof the beneficiary is the note's owner prior to initiating a nonjudicial foreclosure. We disagree.

The first sentence of RCW 61.24.030(7)(a) suggests that the trustee must have proof that the beneficiary is the *owner* of the note. But the second sentence of RCW 61.24.030(7)(a) suggests that a declaration establishing the beneficiary is the actual note's *holder* meets the requirements of the statute.

A note is a negotiable instrument governed by article 3 of the UCC. RCW 62A.3-102. RCW 62A.3-301 of the UCC governs who is entitled to enforce the note. RCW 62A.3-301 provides:

> "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to RCW 62A.3-309 or 62A.3-418(d). *A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.*

(Emphasis added.)

In *Trujillo*, consistent with *Bain's* statement that courts should use the UCC to interpret the DTA's terms, Division One applied RCW 62A.3-301 to interpret RCW 61.24.030(7)(a). Division One concluded that despite ambiguity in RCW 61.24.030(7)(a)'s language, it requires a beneficiary's declaration to establish only that the beneficiary is the *note's holder*, regardless of whether the beneficiary is the note's *owner*:

10

[RCW 62A.3-301(i)] makes clear . . . the "holder" of a note is entitled to enforce the note. It also makes clear that a "holder" may enforce the note "even though the [holder] is not the owner" of the note.

We have no reason to conclude that the legislature intended to depart from either the common law . . . or the UCC, as articulated in RCW 62A.3-301, in enacting RCW 61.24.030(7)(a) regarding proof of who is entitled to enforce a note that is secured by a deed of trust. The language of the first sentence of RCW 61.24.030(7)(a) could have more clearly stated that a beneficiary who is the owner of a note is not always the holder of the note. The holder is entitled to enforce it. Better still, the legislature could have eliminated any reference to "owner" of the note in this provision because it is the "holder" of the note who is entitled to enforce it, regardless of ownership.

Nevertheless, when we consider the second sentence of this statute, which specifies that the beneficiary must be the holder of the note for purposes of proof, together with the case authority and other related statutes we have discussed, we must conclude that the required proof is that the beneficiary must be the holder of the note. It need not show that it is the owner of the note.

181 Wn. App. at 500-01 (alteration in original).

We adopt Division One's reasoning and hold that proof that the beneficiary is the note's holder is sufficient for a successor trustee to initiate a nonjudicial foreclosure, regardless of whether the beneficiary is the note's owner. Looking to related provisions, this interpretation makes RCW 61.24.030(7)(a) consistent with RCW 61.24.005(2)'s language that defines the "beneficiary" as the "holder." Thus, we hold that under RCW 61.24.030(7)(a), proof that the beneficiary is the note's holder is sufficient for a successor trustee to initiate a nonjudicial foreclosure.

2. *RCW 61.24.030(7)(b): Adequate Proof of Holder Status*

Pelzel argues that under RCW 61.24.030(7)(b), Quality cannot accept a declaration of Nationstar's authorized agent as proof that Nationstar was the note's holder. We disagree.

11

No. 43294-3-II

RCW 61.24.030(7)(b) states that the beneficiary's declaration is sufficient, but not necessary, to establish proof that the beneficiary is the note's holder, unless the trustee has violated its duty of good faith in some other way. An authorized agent can make declarations on its principal's behalf:

> [T]he fact of the agency being once established by proper evidence, then the acts and declarations of the agent done or made within the scope of his agency, and while employed in or about the business of his principal, are binding upon the principal, for the reason that the acts and declarations of the agent are then deemed to be the acts and declarations of the principal himself.

*Ennis v. Smith*, 171 Wash. 126, 130, 18 P.2d 1 (1933); *see also State v. Austin*, 65 Wn.2d 916, 920-21, 400 P.2d 603 (1965). Accordingly, we hold that under RCW 61.24.030(7)(b), the declaration of a beneficiary's agent stating the beneficiary is the note's holder is sufficient proof that the beneficiary is the note's holder, unless the trustee has violated its duty of good faith in some other way.

Here, Pelzel does not allege any other way in which Quality violated its duty of good faith as successor trustee. Thus, we reject Pelzel's argument.

D.    *MERS's Assignment of the Deed of Trust*

Pelzel argues Quality's initiation of a nonjudicial foreclosure of Pelzel's property on Nationstar's behalf was improper because MERS's assignment of the deed of trust and note to Nationstar was invalid. We reject this argument.

As we discussed above, because Nationstar held the note, Quality was authorized to initiate a nonjudicial foreclose of Pelzel's property on Nationstar's behalf. Under the DTA "a security interest follows the obligation it secures." *In re Butler*, 512 B.R. 643, 656 (Bankr. W.D. Wash. 2014). Thus, the deed of trust (the security interest) followed the note (the obligation the

12

No. 43294-3-II

deed of trust secures) to Nationstar. This is true regardless of whether the deed of trust was assigned properly or at all. *See* 512 B.R. at 656.

Likewise, Nationstar was the note's holder because the note was payable to bearer and Nationstar had physical possession of it, regardless of whether the note was assigned properly or at all. Thus, the validity of MERS's deed of trust or note assignments to Nationstar had no effect on Quality's authority to initiate a nonjudicial foreclosure of Pelzel's property on Nationstar's behalf, and Pelzel's argument fails. 512 B.R. at 656.

E.  *Servicer or Agent for Fannie Mae*

Pelzel argues that Nationstar's foreclosure was improper because Nationstar did not prove that it was a servicer or agent for the note's owner, Fannie Mae. We disagree.

As the note's holder, Nationstar was the beneficiary entitled to appoint a successor trustee, and Quality had authority to initiate a nonjudicial foreclosure of Pelzel's property on Nationstar's behalf, regardless of whether Nationstar owned the note. Accordingly, whether Nationstar was the servicer or agent of the note's owner had no effect on Quality's authority to initiate a nonjudicial foreclosure of Pelzel's property on Nationstar's behalf. Pelzel's claims for declaratory relief under the DTA fail.

## II. CPA

Pelzel raises arguments under the DTA and CPA on appeal. In the superior court, Pelzel requested damages and attorney fees against the defendants. After the briefing was filed in this case, our Supreme Court held that absent a completed foreclosure sale, a plaintiff could bring a cause of action for monetary damages for alleged DTA violations under the CPA, but not under the DTA. *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412, 433, 334 P.3d 529 (2014).

13

No. 43294-3-II

Because no completed foreclosure sale occurred in Pelzel's case, we consider Pelzel's claims for damages under only the CPA, not the DTA.

Under Washington's CPA, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." RCW 19.86.020. To prevail on a CPA claim, a plaintiff must prove that (1) the defendant engaged in an unfair or deceptive act or practice, (2) the act occurred in trade or commerce, (3) the act affects the public interest, (4) the plaintiff suffered injury to his business or property, and (5) the injury was causally related to the act. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). Failure to establish even one of these elements is fatal to the claim. *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 74, 170 P.3d 10 (2007).

The CPA does not define the term "deceptive," but implicit in that term is "the understanding that the actor *misrepresented* something of material importance." *Hiner v. Bridgestone/Firestone, Inc.*, 91 Wn. App. 722, 730, 959 P.2d 1158 (1998), *rev'd on other grounds*, 138 Wn.2d 248 (1999). For an unfair or deceptive act, "[a] plaintiff need not show that the act in question was *intended* to deceive, but that the alleged act had the *capacity* to deceive a substantial portion of the public." *Hangman Ridge Training Stables Inc.*, 105 Wn.2d at 785.

Pelzel argues that when Quality initiated the nonjudicial foreclosure (1) the defendants violated the CPA by misrepresenting that Quality had authority to initiate a nonjudicial foreclosure of Pelzel's property on Nationstar's behalf, (2) Quality violated the CPA by giving Pelzel a notice of default identifying Nationstar as the note's owner, and (3) MERS violated the CPA by assigning the deed of trust and note to Nationstar as the nominee of Homecomings. We

14

hold that the defendants did not misrepresent Quality's authority to initiate a nonjudicial foreclosure of Pelzel's property on Nationstar's behalf, and we further hold that Pelzel failed to demonstrate how either the Notice of Default's misstatement that Nationstar owned the note or MERS's assignment of the deed of trust on Homecoming's behalf caused him injury.

A. *Quality's Authority To Initiate a Nonjudicial Foreclosure of Pelzel's Property on Nationstar's Behalf*

Pelzel argues the defendants violated the CPA by misrepresenting that Quality had authority to initiate a nonjudicial foreclosure of Pelzel's property on Nationstar's behalf. We disagree.

As we discussed above, Quality had authority to initiate a nonjudicial foreclosure of Pelzel's property on Nationstar's behalf because Nationstar was the note's holder and the deed of trust's beneficiary. Thus, any representation that Quality had authority to initiate a nonjudicial foreclosure of Pelzel's property on Nationstar's behalf was a true representation, and thus, not a deceptive act. Pelzel's claim fails.

B. *Notice of Default*

Pelzel argues that Quality violated the CPA by giving Pelzel a notice of default that identified Nationstar as the note's owner, when Nationstar was not the owner. We disagree.

The notice of default properly informed Pelzel that he was in default and that Nationstar was the entity Pelzel should contact. Pelzel provided no evidence or argument as to how the statement that Nationstar was the owner/beneficiary injured him. Because Pelzel provided no evidence that any injury was causally related to the notice of default's misstatement that Nationstar owned the note, he has failed to prove all the necessary elements of a CPA claim, and his CPA claim fails.

15

## C.    *Assignment of the Deed of Trust*

Pelzel argues MERS violated the CPA by assigning the deed of trust and note to Nationstar as the nominee of Homecomings because Nationstar already held the note, meaning that MERS no longer had physical possession of the note and Homecomings was no longer the note's beneficiary. Again, we disagree.

As we discussed above, because Nationstar was the beneficiary who held the note, Quality was entitled to initiate a nonjudicial foreclosure of Pelzel's property on Nationstar's behalf, regardless of whether MERS's assignment of the note and deed of trust was valid. *Butler*, 512 B.R. at 656. MERS's assignment of the note and deed of trust directed those who read it to Nationstar, the very entity authorized to enforce the note. Pelzel has provided no evidence or argument how MERS's assignment, even if deceptive, caused Pelzel any injury. Because Pelzel provided no evidence that any injury was causally related to MERS's assignment, he has failed to prove all the necessary elements of a CPA claim, and his CPA claim fails.

## ATTORNEY FEES

Pelzel requests attorney fees and costs on appeal under the CPA. Only a prevailing party may recover attorney fees under the CPA. RCW 19.86.090; *Swain v. Colton*, 44 Wn. App. 204, 206-07, 721 P.2d 990 (1986). Here, because Pelzel is not a prevailing party, he is not entitled to attorney fees on appeal. 44 Wn. App. at 206-07.

No. 43294-3-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Melnick, J.

_____
Sutton, J.

17